BOWES, Judge.
Plaintiff, N-Y Associates, Inc. has appealed from the judgment rendered in favor of defendants on a contract to perform certain engineering and consulting services for and on behalf of the Gravity Drainage District Number 2 of St. Charles Parish. The Board of the Gravity Drainage District was, in 1977, interested in securing a professional engineer to correct certain drainage problems in Norco. On May 2, 1977, the Board passed a resolution authorizing the president of the Board of Commissioners (of the Drainage District) to execute a contract for consulting engineering services with plaintiff for the specified project.
On May 5, 1977, such a contract was entered into between plaintiff and the Drainage District. The contract provided for enumerated services, in several phases, which were to be compensated under a basic fee. Certain additional services not included in this basic fee were also detailed and were to be paid by the Owner (Drainage District). A schedule of payments was provided, by which a percentage of the basic fee would become due upon completion of certain phases of the project. The basic fee itself was determined to be a percentage (here, 6.56%) of the entire cost of construction. This basic fee was to constitute complete compensation for services (excluding the additional services in section IV of the contract). •
Funds for payment were to be furnished as follows:
“XI. SPECIAL PROVISIONS
A. No payment shall be due and payable to the Engineer by the Owner, except as specifically provided for in Paragraph XI, B below, unless funds are made available for this project through the sale of bonds or certificates or upon funds being made available therefor out of the general fund, by federal grants, state grants or any other source.
B. The engineering fee for the preliminary phase as described in Paragraph IV, B, shall be due and payable if a bond election to finance this project is not called for within one calendar year after the submittal of the preliminary report by the Engineer to the Owner.”
In July, 1977, plaintiff issued a report entitled “Storm Drainage and Improvements for Gravity Drainage District No. 2 of St. Charles Parish, Norco, Louisiana” and numbered “N.Y. Job No. 415-77E.” It was further marked “Not Final.”
According to the testimony adduced at trial, the costs estimates in this report exceeded the bonding capacity of the District and plaintiff was advised to reduce the plans to conform with the financial abilities of the Board. The estimate of that report *522 showed the Total Construction Cost of Phase 1 to be $1,038,310.00 and the Total Project Cost, including legal, administrative and survey costs (15%), at $1,194,000.00. Plaintiff testified at the trial:
“The maximum amount of the bond issue under the assessment was $689,000.00.” (Trans, p. 93)
No evidence was presented, nor any testimony elicited, which would contradict this statement.
Plaintiff filed suit in July, 1979, after the Board failed to call a bond election to finance the project within the one year allowed by the contract, alleging that 30% of the basic fee, or $88,723.54, was due. Plaintiff further alleged that the Police Jury and Board hired new engineers to perform work provided by the contract, resulting in his economic loss of that specified sum.
An Exception of No Cause of Action was filed on behalf of the Police Jury and an Answer filed by the Board. The trial judge maintained the exception as to the Police Jury, dismissing them as a party to the suit. At the trial on the merits, the Court rendered judgment in favor of the defendant Board.
The contract, prepared by N-Y Associates, provided in Section IV B that payment would become due “upon completion and approval of the preliminary phase as outlined ... an amount equal to 30% of the basic fee.” The testimony indicates that having informed the plaintiff that costs would have to be cut to correspond with their bond capacity, the Board never received or approved a final report. One witness states that a final report was received; but no such report was introduced into evidence. The then-president of the Board and another member testified that no final report was ever received. The plaintiff himself testified that the two reports in evidence, only one of which was marked “final”, appeared identical, as they do to this court. He testified also that he was aware by virtue of a memo from his staff that certain cuts would have to be made, but that no later report was issued.
Accordingly, we are of the opinion that the Board properly and reasonably withheld approval of an unusable report furnished by plaintiff, and that no revised report was ever submitted, and no further approval of the Board was ever solicited for a second usable proposal. Thus, a basic provision of the contract, a prerequisite for the fee sought by plaintiff, was never satisfied. For this reason, we are persuaded that Section XI B of the contract, on which plaintiff’s suit is predicated, never became operative.
Most revealing, perhaps, is the fact that the fee in question is 30% of the costs specified in the preliminary report. Plaintiff testified at the trial that he arrived at the fee in question based on the figures in the preliminary report.
Civil Code article 1798 is clear:
“As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point.”
Plaintiff and defendant obviously could not have united on the final price inasmuch as one was evidently never submitted, much less approved. There was no meeting of the minds on that vital issue. The minds of the contracting parties must have met, as regards the substantial elements of the contract, as a condition precedent to its validity. Woodward v. Barringer, 24 So.2d 200 (La.App. 2nd Cir.1945); Civil Code article 1766 requires expressed consent.
The Fourth Circuit Court of Appeal, in National Roofing and Siding Co., Inc. v. McIntosh, 359 So.2d 1315 (La.App.1978), put it thusly:
“Civil Code article 1798 provides a contract comes into being when something proposed by one is accepted by another. The agreement remains incomplete until the offer is accepted. Civil Code article *523 1800.[1] In this case plaintiff cannot base a claim on a written agreement which, by plaintiff’s own stipulation, never became binding.” (p. 1316)
Plaintiff is clearly not entitled to the 30% fee, under the law and by the terms of his own contract. He may be entitled to actual expenses, as for those services covered under section E. However, since the plaintiff did not advance this argument, we are not able to determine any of those damages.
The theory of unjust enrichment urged by plaintiff must also fail. There is no evidence that the defendant Board benefited from the plans submitted; plaintiff himself could not state whether his plans were used, only that certain “similar” work was performed. His information, even on that, was something that he had read or “heard.” In Edmonston v. A-Second Mortgage Co., 289 So.2d 116 (1974), the Louisiana Supreme Court set forth the prerequisites for unjust enrichment cases to include, of course, an “enrichment”, and that prerequisite remains unproven in the present case. The value of the report is questionable, to say the least, in terms of its usefulness to the Board. In any case, the plaintiff might have included some provision in the contract to allow for payment for his report in the event that he might not, for whatever reason, perform the actual work. That he did not do so may be a customary business practice in his profession. In any event, for whatever reason, plaintiff drew up the contract himself and must live by its contents.
Because we have decided that the contract in question did not come into being as pertains to plaintiff’s fee, it is unnecessary for us to decide the propriety of the trial court’s judgment on the exception.
AFFIRMED.

. C.C. art. 1800
The contract, consisting of a proposition and the consent to it, the agreement is incomplete until the acceptance of the person to whom it is proposed. If he, who proposes, should before that consent is given, change his intention on the subject, the concurrence of the two wills is wanting, and there is no contract.”