562 So.2d 924 (1990)
Marianne TAUZIER and Hozed Cavero
v.
Lois Burton, Wife of/and Van LEWIS, Jr., Martha Ann Samuel, Inc., and Dale Tynes and Associates, Inc.
No. 89-CA-693.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 1990.
Rehearing Denied July 17, 1990.
*925 George C. Stringer, Jr., Harahan, for plaintiffs-appellees Marianne Tauzier and Hozed Cavero.
William P. Curry, Jr., New Orleans, for defendants-appellants Lois Burton, wife of/and Van Lewis, Jr.
Abbey A. Mack, Paul Morphy, A Law Corp., Destrehan, for defendant-appellee Martha Ann Samuel, Inc.
Before KLIEBERT, WICKER and GOTHARD, JJ.
KLIEBERT, Judge.
Marianne Tauzier and Hozed Cavero, plaintiffs/buyers, instituted this action for specific performance of a contract to purchase real estate and alternatively, for liquidated damages, including attorney's fees. Made defendants were the property owners, Lois Burton, wife of/and Van Lewis, Jr. (sellers), Martha Ann Samuel, Inc. (MAS), buyers' real estate broker, and Dale Tynes and Associates, Inc., sellers' real estate broker and listing agent. Martha Ann Samuel, Inc. filed a third party petition against the sellers and their agent praying for indemnification if they be held liable to buyers. The sellers and their real estate agent filed a reconventional demand against the buyers alleging a breach of the purchase agreement and praying for damages, real estate commission, and attorney's fees.
Following a bench trial, judgment was rendered in favor of buyers and against the sellers for $5,000.00 "representing a penalty equal to the deposit on the property held by the plaintiffs' attorney", legal interest, and all costs of the proceedings. Both realtors were dismissed from the action. Only the sellers perfected an appeal which was a suspensive one. For the reasons hereafter stated we reverse that portion of the judgment awarding to buyers $5,000.00 in damages and dismiss the plaintiffs' suit.
Plaintiffs were looking to purchase a piece of property on which to locate their auto repair business. They contacted Debbie Chisolm, a real estate agent for Martha Ann Samuel, Inc. (MAS), about some property they located at 1921 Shrewsbury Road, Jefferson Parish. The property was listed by Dale Tynes and Associates, Inc. (Tynes) and their agent, Delores Earles. Due to an error committed by Ms. Earles, the Jefferson Board of Realtors' Multi List Service (MLS) listed the lot size at 102' × 130'. In actuality the property consisted of two lots, each measuring 30' × 102' or a total of 60' × 102'. The listing agreement between the Lewises and Tynes correctly stated the property size and listed the property for $60,000.00. The real estate agent had a copy of the sellers' acquisition and of a survey of the property.
Buyers' initial offer to purchase the property for $25,000.00 was rejected by the sellers. Before preparing their second offer buyers began to suspect that the property was substantially smaller than that listed in the MLS, hence, they investigated. Their investigation included research in the Jefferson Parish Conveyance Office which convinced them the property was much smaller than that stated on the MLS and the original offer. Further, although not fully admitted by the buyers, the evidence preponderates to the effect buyers knew the correct lot dimensions at the time the offer of August 27, 1987 was submitted. Their second offer[1] was dated August 27, 1987 and contained the following pertinent provisions:
1) Lot size 102 × 130 or per title,
2) Sale price $25,000.00,
3) All cash to seller, $7,000.00 (seven thousand) upon acceptance of offer, owner to carry balance until payment in full on or before Oct. 31, 1987,

*926 4) Buyers to deposit $7,000 with sellers' agent not later than 24 hours from acceptance of offer,
5) Occupancy at Act of Sale,
6) Act of Sale to be passed on or before September 14, 1987,
7) Line 64 provided: "This offer is contingent upon results of a survey to be paid for by purchaser upon acceptance of offer. Survey must reflect 102 × 130 sq. feet min. for full purchase price. If survey reflects less square footage, purchase price is to be reduced by same percentage as the property is reduced."
8) The offer remains binding and irrevocable through Tuesday, Sept. 1, 1987 at 5:00 P.M.
The sellers did not respond to this offer before the September 1, 1987 termination date. This prompted one of the buyers, Mrs. Tauzier, to call and meet with Mr. Dale Tynes on September 2, 1987 to complain about past communication problems and to make an inquiry as to sellers' intention relative to the August 27, 1987 offer. Thereafter, the sellers' agent, Ms. Earles, revised the buyers' offer to make the counter offer attached hereto as Appendix I, had the same signed by Mrs. Lewis, and delivered it to MAS. The counter offer was dated September 3, 1987, but was never signed by Mr. Lewis. When Ms. Chisolm called Mrs. Tauzier to inform her of the counter offer and if acceptable to sign it, Mrs. Tauzier went to her realtor's office and was furnished with the original counter offer. Some of the pertinent provisions of the buyers' offer listed above were modified so that the pertinent provisions of the sellers' counter offer read as follows:
1) Lot size 102 × 130 or per title
2) Sale price $35,000,
3) All cash to seller, $10,000.00 (Ten thousand) upon acceptance of offer, owner to carry balance of $25,000.00 until payment in full on or before Oct. 31, 1987,
4) Buyers to deposit $10,000 with sellers' agent not later than 24 hours from acceptance,
5) Occupancy at Act of Sale,
6) Act of Sale to be passed on or before 9/14/87,
7) Line 64 provided: "This offer is contingent upon the results of a survey to be paid for by purchaser upon acceptance of offer. Survey must reflect 102 × 130 sq. feet min. for full purchase price. If survey reflects less square footage, purchase price is to be reduced by same percentage as the property is reduced. We will not include the expenses of the sheriff's notice."
8) The offer remains binding and irrevocable through Tuesday, Sept. 1, 1987 September 6, 1987 5:00 P.M.
Tynes and Tauzier met on the property on September 4, 1987. Upon inspection of the property and the survey it was apparent the lot measurements were substantially less than 102' × 130' as shown in the buyers' offer and the sellers' counter offer. Tynes, on behalf of the sellers, sought to withdraw the counter offer and to obtain possession of the counter offer that had not as yet been accepted by the buyers. Mrs. Tauzier refused and retained possession of the original document. On the same day, Tynes wrote a letter directed to and hand delivered to Martha Ann Samuel, Inc.'s office stating in part as follows:
"This letter will confirm our conversation concerning the withdrawal of the referenced contract.
On behalf of our client, Mrs. Lois Lewis, I am making that request in writing. This will confirm our formal request as of 12:15 PM this date [September 4, 1987]. Please withdraw the counter offer for technical reasons."
On the same day the manager of MAS's office and Ms. Chisolm called Mrs. Tauzier in an attempt to obtain the original counter offer. Mrs. Tauzier refused to release it.
By letter dated September 8, 1987 to the manager of MAS, Mr. Tynes explained that the technical reasons for attempting to withdraw the offer were relative to the error in the property size, the incompleteness of the counter offer because of Mr. Lewis' failure to sign, the ambiguity in the *927 time the offer was to remain open, and the failure of his clients to initial the change [from the original offer] as to the time the offer was to remain irrevocable.
On September 5, 1987 buyers accepted the offer before a Notary, delivered the instrument to their realtor with instructions to deliver same to sellers before 5:00 P.M. on September 6, 1987. At the same time buyers attempted to give to their agent, Ms. Chisolm, a check for $5,000.00 for delivery to the sellers' agent as the deposit required by the agreement. Ms. Chisolm refused to accept the check because Mrs. Tauzier refused to part with the original agreement. The buyers' agent delivered the buyer-accepted sellers' counter offer to the sellers' agent without a deposit. The sellers' agent returned the counter offer with the letter dated September 8, 1987 referencing the previous withdrawal, and explaining his technical reasons for withdrawing the offer.
By letter dated September 10, 1987 counsel for buyers wrote the realtors and the sellers informing them he was holding a $5,000.00 deposit made by his clients who were willing to accept the property size of 60' × 102' at the reduced price (approximately $17,500.00) pursuant to the provisions (paragraph 7) of the agreement to buy and sell, which he considered binding. He further advised that his clients stood ready and willing to go through with the act of sale after examination of title and certificates. When no response was received from this letter, suit was filed requesting first, specific performance, or if the agreement was void or not enforceable, then, damages and attorney fees.
In his reasons for judgment the trial court found that: (1) the actions of Dale Tynes and Associates, Inc. were not effective in revoking the sellers' counter offer on September 4, 1987, (2) the sellers did not raise the fact Mr. Lewis had not signed the counter offer as a defense in their pleadings, and (3) the buyers validly accepted the counter offer in writing. Based on these findings he awarded $5,000.00 to the buyers while observing that the sellers may have a valid claim against their realtor[2] based on their negligence in using incorrect dimensions for the property. Although we may agree with the trial judge's other reasoning, given the circumstances here, we hold he erred in concluding the parties entered into an enforceable contract to buy and sell the property.
A contract is incomplete unless there is a meeting of the minds between the parties as to object and price. For a sale to be perfected the parties must agree to the sale price and the object. LSA-C.C. Article 2456. A contract is formed by the consent of the parties established through offer and acceptance. LSA-C.C. Article 1927. This "consent may be vitiated by error, fraud, or duress." LSA-C.C. Article 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. Article 1949. Kethley v. Draughon Business College, 535 So.2d 502 (2nd Cir.1988). Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. LSA-C.C. Article 1953.
Here, although the buyers were aware of the error in measurements and made the offer of August 27, 1987 with the error in mind, the sellers were not and therefore unaware the effect of the percentage reduction clause (provision No. 7 above) was to offer to sell the property for $17,500.00. Further, the buyers knew or should have known the sellers were unwilling to sell the property for $17,500.00 because they had turned down two offers at $25,000.00. Thus, the requisite mutual consent necessary to confect a valid buy and sell agreement was missing. See Dawley v. Sinclair, 419 So.2d 534 (5th Cir.1982); N-Y Associates, Inc. v. St. Charles Parish Police Jury, 422 So.2d 520 (5th Cir.1982). Further, although not relied on by us, it *928 appears there was no basis in fact or in law for the buyers to unilaterally reduce the deposit amount from $10,000.00 to $5,000.00.
For those reasons, we hold the parties did not enter into a valid contract, therefore, each party has to be restored to his original position. Accordingly, that portion of the trial court judgment awarding damages of $5,000.00 to buyers against sellers is reversed. The remainder of the judgment is affirmed in all other respects and plaintiffs' suit dismissed. Each party is to bear his own costs.
REVERSED IN PART; AFFIRMED IN PART.
*929 
NOTES
[1] All offers to purchase/sell were made on the standard form "Agreement to Purchase or Sell" used by New Orleans area realtors, here Martha Ann Samuels, Inc.
[2] There was no third party claim filed by the sellers against their realtor.