535 So.2d 502 (1988)
E. Ray KETHLEY, Plaintiff-Appellee,
v.
DRAUGHON BUSINESS COLLEGE, INC., Defendant-Appellant.
No. 20,083-CA.
Court of Appeal of Louisiana, Second Circuit.
November 30, 1988.
Rehearing Denied January 12, 1989.
*503 James W. Wyche, Blanchard, Walker, O'Quin & Roberts, Shreveport, for defendant-appellant.
W. Orie Hunter, III, Shreveport, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
The defendant, Draughon Business College, Inc., appeals the trial court judgment awarding the plaintiff, E. Ray Kethley, $1,100 under a contract calling for the plaintiff to teach two courses for the defendant. The plaintiff answers the appeal, asking that this court reverse only that part of the judgment denying him penalties and attorney's fees. We amend and affirm as amended.
In September, 1986, the defendant employed the plaintiff, a Shreveport attorney, as a permanent, part-time instructor for its paralegal program. The plaintiff had been informed of the opening by Martha Levardsen, a co-worker at his regular place of employment who also taught courses in the defendant's paralegal program. Ms. Levardsen told him that the defendant was looking for someone to teach a course entitled Legal Research I. According to the plaintiff, Ms. Levardsen told him that the compensation for teaching in the defendant's paralegal program was $200 per course per month.
The plaintiff was interviewed by Doris Pitts, the academic director at Draughon. The plaintiff testified that at the end of the interview, Ms. Pitts asked him if he was aware of the compensation. He replied that Ms. Levardsen had told him that the compensation was $200 per course per month. According to the plaintiff, Ms. Pitts replied, "Yes, that's right." In the 1986 fall quarter, the plaintiff taught one course, Legal Research I, for which he was paid $200 per month.
In late December, 1986, Donna Utley, the paralegal program director, asked the plaintiff if he would teach Legal Research I and Legal Research II in the 1987 winter quarter (January, February and March, 1987). The plaintiff agreed to teach both courses. Originally, the two courses were to be taught at separate times. Each class was to meet one night a week for four hours. Thus, the plaintiff was to teach a total of eight hours a week. In early January, before the classes began, Ms. Utley asked him if he would teach the two courses at the same class time. He agreed to teach the courses as requested. Although neither Ms. Pitts nor Ms. Utley discussed his compensation with him at this time, he assumed that he would be receiving $200 per course per month, or $400 per month, because he believed that the agreement the parties reached in September, 1986 applied in the winter quarter.
He taught the two classes at the same class time, as requested, until January 15, 1987, the first payday for the winter quarter. He expected to receive $200 for the two weeks that he had worked. Instead, he received only $100. Upon inquiry he was informed that he would not be paid more without authorization from Ms. Pitts. The plaintiff then went to Ms. Pitts' office and told her that his paycheck was incorrect. Ms. Pitts promised to investigate.
The plaintiff called her the following week. According to the plaintiff, Ms. Pitts told him for the first time that he was teaching what the defendant calls a "combined class" and that he would receive the same amount for teaching Legal Research I and II in this format as he had received *504 for teaching Legal Research I the previous quarter. The plaintiff told her that the arrangement made no sense because there were two sets of assignments, two sets of lectures and two sets of students. According to the plaintiff, Ms. Pitts replied, "I assume you will not be continuing under these conditions." The plaintiff did not respond to her statement.
The plaintiff then took his complaint to Dan Reed, Ms. Pitts' supervisor. Although Reed told the plaintiff that he would check into the situation, the plaintiff never heard from Reed again. The plaintiff believed that his employment had been terminated. The defendant then employed Dan Lagrone to teach Legal Research I and II.
When the plaintiff's continued attempts to resolve the situation were unsuccessful, he filed suit asking for $1,100, the amount due under the winter quarter employment contract, penalties equal to 90 days wages pursuant to LSA-R.S. 23:632 ($1,200), and attorney's fees ($1,000). In the alternative, the plaintiff asserted that if the court found that the employment contract was not for a fixed term, he was entitled to $2,000 for the damages he sustained in relying, to his detriment, on the defendant's promise.
The defendant presents a slightly different account. The defendant denies that it ever agreed to pay the plaintiff $200 per course per month. Ms. Pitts testified that in September, 1986, the plaintiff was hired as a permanent instructor, which simply meant that he was hired to teach Legal Research I for the fall quarter. She and the plaintiff did not agree on any courses for him to teach in the future. She did admit that she and the plaintiff discussed the possibility of his teaching other courses in the paralegal program. At the time she hired him, she told him that he would be paid $200 per month for teaching Legal Research I in the 1986 fall quarter. She denied telling him that he was to be paid $200 per course per month for every course that he taught at Draughon. She testified that the defendant's policy was to pay its instructors $200 per "contact hour." Contact hours are the hours that the teacher spends in the classroom. Ms. Pitts stated that this policy was unwritten. The plaintiff testified that he had never heard of the defendant's "contact hour" policy before the day of trial. Ms. Pitts admitted that she did not recall discussing the defendant's policy of paying on the basis of contact hours.
Tom Williams, another instructor in the paralegal program, testified that the defendant never told him that his salary was based on the number of hours he spent in the classroom. He began working for Draughon in January, 1987. Initially, he taught only one course for which he was paid $200 per month. When the defendant asked him to teach another course, it told him he would be paid another $200 per month.
Dan Lagrone, the attorney who taught the legal research classes when the plaintiff left, testified that when Ms. Pitts asked him to teach the plaintiff's class, she did not tell him that the class consisted of both Legal Research I and II. She just asked him to teach "the course." After he found out that he was teaching two courses at one time, he contacted the defendant and "hinted" that he would like more money, but the defendant did not acquiesce.
In response to a question about the reason that the defendant wanted the two courses taught at the same time, Ms. Pitts stated that the subject matter of the two courses was related and that it was not feasible to have two instructors for the small number of students in each class.
The defendant also asserts that it did not terminate the plaintiff's employment but that the plaintiff quit. Ms. Pitts testified that after she told him that the amount of his paycheck would not be increased, he told her that he would not be able to continue teaching under those conditions.
Both parties rely on Exhibit P-O, an employee information sheet dated September 18, 1986, to support their interpretation of the employment agreement. The document provides that the plaintiff was to be paid $200 per month, that he was a permanent employee, and that the number of class hours to be worked were "one per *505 eveningfour per week." It does not state that the plaintiff was hired for the fall quarter only, nor does it state that he was hired to teach for more than the fall quarter. It does not state that he is to be paid $200 per course per month. It simply sets forth his starting date.
The record reveals the following information about the defendant's paralegal program. The program consists of 23 courses. The defendant offers a six month program and a nine month program. The defendant does not charge for each individual course; instead, the defendant charges one fee for the entire program. The nine month program costs each student $3,500. Legal Research I and Legal Research II are separate courses in the defendant's paralegal curriculum. Each course is worth four credit hours.
Most of the classes at Draughon are taught one hour a day, four days a week. Instructors of these classes receive $200 per month. Some classes were taught two hours per day, four days a week. Instructors of these classes earned $400 per month.
Draughon also offers more than one section of certain courses. If a teacher taught two sections of a course worth four hours, then he was in the classroom for eight hours a week and was paid $400 a month. Ms. Pitts initially testified that other people had taught combined classes in the past at $200 per month. Despite this assertion, she stated that she could not name these teachers without looking at the schedule of class assignments. She finally admitted that there were no other people teaching combined courses in the paralegal program at that time.
The trial court found that the plaintiff was entitled to $400 per month for the winter quarter, or a total of $1,200. Since the defendant had paid him $100, the court awarded the plaintiff $1,100. Because the court found that the plaintiff was an independent contractor and not an employee, it denied the penalties provided for in LSA-R. S. 23:632 because that statute did not apply to independent contractors.
The defendant presents several assignments of error on appeal, some of which are in the alternative. The threshold assignment presents the issue of whether a contract between the parties existed. In this respect the defendant argues that a meeting of the minds did not occur between the parties as to the salary to be paid.
LSA-C.C. Art. 1846, dealing with proof of contracts, applies to oral contracts of employment. Fox v. Don Siebarth Pontiac, Inc., 458 So.2d 575 (La.App. 3d Cir. 1984), writ denied, 461 So.2d 314 (La.1984). This article provides that if a contract in excess of $500 is not reduced to writing and is not required by law to be reduced to writing, it must be proved by at least one witness and other corroborating circumstances. The terminated employee can be the one witness, and he needs to produce only general corroboration of his claim. Higgins v. Smith International, Inc., 716 F.2d 278 (5th Cir.1983).
Consent of the parties is necessary to form a contract. LSA-C.C. Art. 1927; Liberty Personnel, Inc. v. Children's Hospital, 487 So.2d 518 (La.App. 4th Cir.1986). Error may vitiate consent. LSA-C.C. Art. 1948. According to LSA-C.C. Art. 1949, "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." Cause is the reason why a party obligates himself. LSA-C.C. Art. 1967. Error concerns cause "when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation." LSA-C.C. Art. 1950.
At the time that the defendant hired the plaintiff in September, 1986, the parties did not contemplate that the plaintiff might teach a combined class in the future. The plaintiff had heard that the defendant needed someone to teach Legal Research I in the 1986 fall quarter. Although the plaintiff and Ms. Pitts discussed the possibility of his teaching classes in the future *506 and the plaintiff was said to be a "permanent instructor" when hired in September of 1986, the agreement reached at that time only contemplated the fall quarter.
While it seems clear that the defendant's policy was to pay its instructors $200 per course per month for courses that were taught separately, the defendant's salary policy with respect to combined classes was never established. While the defendant contended that the policy was payment on the contact hour basis, Ms. Pitts could not point to any current or recent person hired on that basis other than Mr. Lagrone, who was substituted for the plaintiff when he withdrew.
Thus, before the quarter began, Ms. Utley asked plaintiff to teach the two courses together. They did not discuss his compensation for teaching the two courses in this format. The defendant intended to pay the plaintiff only $200 a month for teaching both courses since he was teaching them in a combined format. The plaintiff believed that he was still going to be paid $400 per month because he thought the defendant's practice of paying $200 per course per month for courses taught separately applied to classes taught in a combined format. In a nutshell, it seems obvious that the plaintiff expected to receive $400 per month (although he was teaching one-half the time originally agreed to) because he was teaching two courses. It seems equally obvious that the defendant planned to pay only $200 per month (although the plaintiff was teaching two courses) because the class (contact) hours were reduced by one-half.
Clearly, there was no meeting of the minds as to the rate of compensation, and any finding to the contrary which may be implicit in the trial court opinion is clearly wrong. Extra compensation was the cause of the plaintiff making the contract. He would not have agreed to teach the extra course if he had known that he was going to be paid the same amount that he received for teaching one course, and the defendant would never have combined the courses if it had to pay the full amount. In other words, there was an error as to a cause of the contract which vitiated consent. LSA-C.C. Arts. 1949 and 1950. When both parties are in error, the rescission of the contract is appropriate. LSA-C.C. Art. 1949, comment (d); Lyons Milling Co. v. Cusimano, 161 La. 198, 108 So. 414 (1926).
Although the contract should be rescinded and thus the plaintiff cannot recover thereunder, he is not without relief. The defendant promised to employ the plaintiff to teach two courses. Implicit in this promise was a reasonable expectation by the plaintiff that he would receive more than he received for teaching one course. The plaintiff therefore relied on this promise to his detriment. LSA-C.C. Art. 1967 protects plaintiff's reliance interest.[1] That article provides that "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying."
LSA-C.C. Art. 1967 changed Louisiana law by incorporating detrimental reliance as an additional basis for the enforceability of obligations. LSA-C.C. Art. 1967, comment (a).[2] The defendant's promise to employ the plaintiff to teach two courses and the implicit promise to pay him more for teaching two courses than for teaching one are enforceable obligations under LSA-C. C. Art. 1967. The court may grant either *507 specific performance or damages to the disappointed promisee. LSA-C.C. Art. 1967, comment (e). Obviously, in the instant circumstances, plaintiff's recovery must be in the form of damages rather than specific performance.
According to LSA-C.C. Art. 1995, "[d]amages are measured by the loss sustained by the obligee and the profit of which he has been deprived." The court need not award both of these elements of damages. LSA-C.C. Art. 1967, comment (e). According to LSA-C.C. Art. 1967, the court may limit recovery to "the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise."
The plaintiff has undoubtedly suffered damages as a result of his reliance on the defendant's promise. He expended significant time preparing research projects and lesson plans for Legal Research II. Also, he taught both classes for two weeks. We determine that the sum of $500 should adequately compensate the plaintiff for the classes he taught and the damages he suffered relying on the defendant's promise, subject to a credit for the $100 previously paid.
Plaintiff's answer seeks penalties and attorney's fees due to the defendant's failure to pay the defendant's salary when he quit. LSA-R.S. 23:631 provides that upon the discharge or resignation of an employee, the employer shall pay the amount due under the terms of employment not later than three days following the date of discharge or resignation. LSA-R.S. 23:632 provides that an employer who fails to comply with LSA-R.S. 23:631 is liable to the employee for penalties and attorney's fees.
These statutes are inapplicable to the instant case. LSA-R.S. 23:631(A) states that the employer is required to pay the amount due under the terms of employment "whether the employment is by the hour, day, week, or month." This statute is not applicable to employees who are employed for a specific period of time. Gatti v. Southern Research Company, 271 So.2d 376 (La.App. 2d Cir.1972); Alexander v. American Food Management, Inc., 424 So.2d 1246 (La.App. 3d Cir.1982); Dunn v. Bessie F. Hiern School, Inc., 209 So.2d 538 (La.App. 4th Cir.1968), writ refused, 252 La. 469, 211 So.2d 331 (1968). In Alexander and Dunn, the specified periods of time were a semester and a school year, respectively. The plaintiff in the present case was employed for a specified period of time. Similar to the employees in Alexander, he was employed for part of a school year.
In conclusion, the judgment appealed is amended to reflect that the plaintiff's recovery is $400, and as amended is affirmed at appellant's cost.
AMENDED AND AFFIRMED.

ON APPLICATION FOR REHEARING
Before MARVIN, JASPER E. JONES, SEXTON, HALL and LINDSAY, JJ.
Rehearing denied.
NOTES
[1] We have applied detrimental reliance to the instant circumstances rather than quantum meruit because an essential element of quantum meruit is lacking. We are unable to discern any benefit that inured to defendant because of plaintiff's preparation for the extra course. Fullerton v. Scarecrow Club, Inc., 440 So.2d 945 (La.App. 2d Cir.1983).
[2] Thus culpa in contrahendo, long championed by Professor Mitchell Franklin, Tulane's distinguished former W.R. Irby Professor of Law, finds codification in Louisiana through "detrimental reliance." See Herman, Detrimental Reliance in Louisiana LawPast, Present, and Future (?): The Code Drafter's Perspective, 58 Tul.L. Rev. 707 (1984); Hoff, Error in the Formation of Contracts in Louisiana: A Comparative Analysis, 53 Tul.L.Rev. 329 (1979); Sanders, Culpa In Contrahendo: Origin, Theory, Possible Utility for Louisiana, 22 La.B.J. 285 (1975); Schwenk, Culpa In Contrahendo in German, French and Louisiana Law, 15 Tul.L.Rev. 87 (1940); The 1984 Revision of the Louisiana Civil Code's Articles on ObligationsA Student Symposium, 45 La.L. Rev. 747, 754 (1985); Note, ObligationsMeasure of Recovery for Change of Position Under Unenforceable ContractsCulpa In Contrahendo, 25 Tul.L.Rev. 133 (1950). But see Litvinoff, Offer and Acceptance in Louisiana Law: A Comparative Analysis: Part IOffer, 28 La.L.Rev. 1 (1967).