576 So.2d 546 (1991)
Wayne FRANKLIN, Plaintiff-Appellee/Appellant,
v.
RAM, INC. (OF ARKANSAS), Defendant-Appellant.
No. 22,022-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1991.
*547 Anthony J. Bruscato, Bruscato, Loomis & Street, Monroe, for plaintiff-appellee/appellant.
John C. Laird, McLeod, Swearingen, Verlander, Price & Noah, Monroe, for defendant-appellant.
Before BAILES, FOOTE and SCOTT, JJ., Ad Hoc.
FOOTE, Judge.
This is an action brought by the plaintiff, Wayne Franklin, against Ram, Inc. to recover the balance allegedly due for unpaid wages and for penalties and attorney's fees due under the provisions of LSA-R.S. 23:631, 632. The trial court awarded plaintiff judgment in the amount of $6,247.36, with judicial interest from date of judicial demand and for costs. Plaintiff's claim for penalties and attorney's fees was denied. From this judgment defendant has appealed. Plaintiff has answered the appeal urging error of the trial court in denying his claim for penalties and attorney's fees.
The issues presented are the amount due plaintiff under basic contract and supplements thereto, and the application of LSA-R.S. 23:631, 632, penalties and attorney's fees.
At the conclusion of trial, the trial court analyzed the three contracts in light of evidence adduced and logically tabulated the gross amount to which plaintiff was entitled, deducted the amount admittedly paid, and rendered judgment for the sum of $6,247.36, with judicial interest and costs. The court denied plaintiff's claim for penalties and attorney's fees, stating that the defendant was not arbitrary or capricious
because admittedly, the whole thing is confused. The plaintiff obviously did not even understand and was confused about what it was ...
We affirm this result though for reasons somewhat different from the trial court.

STATEMENT
Plaintiff was a welding supervisor, specializing in boiler and power plant welding. He had worked for defendant, Ram, Inc., hereinafter "Ram," off and on for a period of thirteen to fifteen years. Ram had a contract for the technical assistance to repair boilers in a large paper mill in Jari, Brazil. This was specialty work requiring Ram to bring some of its specialists such as plaintiff from the United States to Brazil to supervise and instruct the Brazilian nationals who were to do the actual welding.
Plaintiff arrived in Brazil on May 15 or 16, 1988 and finished work on June 24, 1988.
During this time span plaintiff's wages were controlled by three written instruments; the basic contract dated May 2, 1988 (exhibit P-1), the first supplemental contract dated June 1, 1988 (exhibit P-2), and the second supplemental contract dated June 7, 1988 (exhibit P-3). All contracts were prepared by defendant, Ram, the first in the United States, a typewritten two *548 page instrument, and the second two handwritten in Brazil. The two supplemental contracts were necessitated by the unforeseen difficulty in getting production from the native welders. The American supervisors, including plaintiff, were asked to perform additional duties over and above the original assignment.

AMOUNT OF WAGES DUE
The basic contract, P-1, provides for four phases of work, that is pre shut-down, shut-down or agreed fee, post shut-down, and completion delayed payment. The pertinent paragraphs of this contract are as follows:
Dear Employees:
Ram, Inc. ("Ram") is setting forth its understanding of your proposed employment. Please review, sign below and return if you agree with all terms. You will be paid $8,160.00 ("Agreed Fee") for seventeen working days during shutdown of a B & W boiler located in Jari, Brazil. You will be considered a salaried employee of Ram at the executive level employed to instruct and supervise Brazilizn (sic) nationals. You will receive an additional fee of $1,200.00 per week for pre or post shutdown times. If you request Ram will send up to $500.00 per week to your dependants (sic) in the USA; which sum will be deducted from the Agreed Fee.
If completion of this job is delayed in any way by the client, due to circumstances beyond our control or because of additional work that extends the critical path, you will receive an additional fee of $180.00 per day until completion.
All transportation from Monroe, Louisiana to Belem, Brazil and from Belem, Brazil to Monroe, Louisiana will be paid by Ram. Travel pay of $240.00 each way will be paid by Ram....
You will supervise and instruct Brazilian nationals in the replacement of boiler tubes and the installation of smelt spouts with wall panels. Ram will be working two twelve hour shifts for seven days a week during the shutdown....
The trial court found that under this contract plaintiff is entitled to the following: 1) $1,542.86 ($1,200.00 per week) for pre shut-down work done from May 16, 1988, through May 24, 1988 (9 days); 2) $8,160.00 (agreed fee) for work performed from May 25, 1988, through June 10, 1988; 3) $2,340.00 ($180.00 per day) for work performed because completion was delayed, from June 11, 1988 through June 23, 1988 (13 days); and 4) $480.00 for travel expenses to and from Brazil.
The first supplemental contract, P-2, entered into on June 1, 1988, provides as follows:
This is a supplement to original contract for Jari Boiler Repair Job Ram Cont. No. 9380.
Supplement agreement as stated below We Ram, Inc.
Does here by (sic) agree to pay in addition to the original contract $35.00 per hour or $75.00 total per hour for the installation of 4 smelt spout tube panels and smelt spouts, not to exceed 60 hours per man or a total of $2,100.00 per man.
It is agreed by both parties that the 60 hours was worked and that the $2,100.00 was earned by the plaintiff. No dispute exists over P-2.
The second supplemental agreement, entered into on June 7, 1988, states:
Amendment to employee contract for Ram, Inc....
This amendment is to provide for "handson" work to be performed on subject project in addition to supervisory duties being performed. In return for these additional duties, Ram will reimburse employees at the rate of $75 per hour for every hour worked in this capacity.
This amendment is to begin on 6-7-88 and to continue until project is completed or employee is advised that "hands on" duties will no longer be required.
Plaintiff testified that he worked every day performing "hands on" work from the date of this contract, June 7, 1988, through June 23, 1988. Defendant's time sheet corroborates this. Thus, under this contract the trial court found plaintiff to earn $12,750.00. The trial court also awarded *549 $180.00, apparently for the two hours plaintiff worked on June 24, 1988.
A total of the above wages earned is the sum of $27,552.86, less the $21,305.50 previously paid, or $6,247.36.
Defendant, Ram, argues that the trial court should not have awarded plaintiff $750.00 per day ($75.00 an hour for ten hours a day) from June 7 to June 10, 1988, pointing out that the first contract (P-1) compensated plaintiff $480.00 per day for this period. We find, as did the trial court, that plaintiff was entitled to this $750.00 per day because of the wording of the June 7, 1988 supplement (P-3), which states,
In return for these additional duties, Ram will reimburse employees at the rate of $75.00 per hour for every hour worked in this capacity ...
P-1 specifies that the plaintiff contracted to be a supervisor and instructor and this contract, P-3, is very clear that additional duties are contracted for by the parties and the additional duties will be compensated at a rate of $75.00 per hour. The evidence shows that these duties were over and above the supervisory and instructional duties which continued throughout the entire time. We agree with the trial court that P-3 amends and supplements P-1 and does not supplant it in any way.
Similarly, defendant's objection to the award of $180.00 per day is unsupported by the evidence or any of the contracts. The $180.00 per day was apparently placed in the contract P-1 as additional compensation for a continuance of the contract beyond the contemplated completion under the obviously harsh conditions, i.e. remote, hot and generally unpleasant.
Defendant argues that plaintiff's petition was improperly expanded by the introduction of plaintiff's exhibit 5, a computation prepared by plaintiff's attorney which exceeded the amount sought. Plaintiff's attorney stated that he would be bound by the pleading, but a reading of the entire record indicates that this concession referred to the amount sought, i.e. $7,419.50. The computation claimed an amount due of $9,568.82. Plaintiff's attorney agreed not to expand the amount sought beyond $7,419.50. This becomes immaterial in view of the lesser amount awarded by the court.
Defendant correctly points out that the plaintiff's petition seeks recovery on the basis of an unproven hourly amount due plaintiff ($85.00 an hour). We hold this to be merely an unproven allegation and plaintiff's testimony is clear that he seeks recovery limited to the written instruments. There is no doubt that this case involves an interpretation of the three contracts and no other. This "theory of the case" defense will not prevent plaintiff recovery under these contracts in view of LSA-C.C.P. Art. 862 and the jurisprudence. The purpose of this article is to suppress the "theory of the case" doctrine and permit a court to grant relief warranted by the averments contained in the pleadings and the evidence. Brown v. Brown, 348 So.2d 699 (La.App. 1st Cir.1977).
Defendant further contends that the trial court erred in basing its decision on LSA-C.C. Art. 2056. This article states:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text ...
The trial court did in fact apply this article and, assuming there was "doubt" that could not otherwise be resolved, the court was justified. We find that defendant was the author of all contracts. Plaintiff had no input whatsoever in the basic contract, P-1. Plaintiff testified that P-3 was requested by the other American workers. He denied any input into what it contained. It was handwritten by an agent of the defendant. Neither plaintiff's suggestion as to the amount per hour, nor his demand for a contract cause him to become the author of the contract.
We question whether the cited article has application, not because of plaintiff's input but because we fail to find "doubt" requiring this legal presumption. We find the contracts, though obviously not prepared by an attorney, nevertheless leave no room for "doubt" but rather the words have a clear meaning. In essence, they provide *550 additional pay for additional duties with no elimination of prior payment provisions.
We feel that the words of the contract construed under the surrounding circumstances are clear and explicit and lead to no absurd consequences. Thus, under Code Article 2056 no further interpretation may be made in search of the parties' intent. Adams v. Adams, 503 So.2d 1052 (La.App. 2d Cir.1987). Where a contract is clear and unambiguous the letter should not be disregarded under pretext of pursuing its spirit. Maloney v. Oak Builders Inc., 256 La. 85, 235 So.2d 386 (1970).

PENALTIES AND ATTORNEY FEES
Plaintiff seeks penalties and attorney fees under LSA-R.S. 23:631, 632. The trial court denied both, finding no arbitrary withholding of wages by the defendant.
We affirm this result but base our reason on the fact that the statutes do not apply to plaintiff since he was not discharged nor did he resign.
The statutes provide:
§ 631. Discharge or resignation of employees; payment within three days after termination of employment
A. Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation. Said payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's record. In the event payment is made by mail, the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.
B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the three day period provided for in Subsection A of this Section.
§ 632. Liability of employer for failure to pay; attorney fees
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
These statutes are penal in nature and thus must be strictly and narrowly construed. They cannot be expanded. They are limited to those employees who have either been discharged or who resigned.
Plaintiff's counsel cites the case of Bannon v. Techeland Oil Corporation, 205 La. 689, 17 So.2d 921 (1944), but in this case the plaintiff obviously resigned. Also, the case of Collins v. Joseph, 250 So.2d 796 (La.App. 4th Cir.1971), is cited. This case did not find the statutes applicable. The statutes were applied in the case of Urian *551 v. Bullard, 380 So.2d 707 (La.App. 4th Cir. 1980), writ denied, 383 So.2d 783 (La.1980). This case is distinguishable because it dealt with an employee who quit work the day before her last scheduled day. Apparently the court was of the opinion that she either resigned or was discharged; we feel that neither event occurred in the present case.
An additional ban to plaintiff's relief under this statute is the fact that there is present no pay period. In fact no date nor time for payment is made in any of the three contracts. Of course it can reasonably be assumed that payment will be forthcoming at some time after completion of the job either in the United States or Brazil.
LSA-R.S. 23:631 requires that the pay period be by the hour, the day, the week or the month. Mason v. Norton, 360 So.2d 178 (La.1978); Keith v. Little, 434 So.2d 548 (La.App. 2d Cir.1983); Gatti v. Southern Research Co., Inc., 271 So.2d 376 (La.App. 2d Cir.1972).
The statute is not applicable to employees employed for a specific period of time without a specific payment date. Kethley v. Draughon Business College, Inc., 535 So.2d 502 (La.App. 2d Cir.1988). In the Kethley case payment was not due until the overall job had been approved and the employer had received payment. LSA-R.S. 23:631 was held to be inapplicable. Franklin's employment was not by the hour, day, week or month as required by LSA-R.S. 23:631. Under the employment agreement in the instant case, there was no regular or set pay period. The agreement did provide that Ram would send up to $500 per week to Franklin's dependents. However, the wages earned were paid in one lump sum at the end of the contract. In Keith v. Little, supra, this court held that LSA-R.S. 23:631 was inapplicable where there was no regular or set pay period and wages were not due until after the overall job had been approved and the employer had received payment for the work performed. Therefore, LSA-R.S. 23:631 is inapplicable to the case at hand. Franklin's demands for penalties and attorney's fees must be rejected.
Our finding that the statute is inapplicable obviates addressing the serious question of good faith on the part of defendant in withholding the unpaid wages thus providing a defense from penalties though not from the imposition of attorney fees. Carriere v. Pee Wee's Equipment Co., 364 So.2d 555 (La.1978); Alexander v. Brown Builders, Inc., 490 So.2d 653 (La.App. 2d Cir.1986); Haywood v. Salter, 421 So.2d 1190 (La.App. 2d Cir.1982).
For the foregoing reasons the judgment of the trial court is affirmed with costs assessed to defendant-appellant.