663 So.2d 480 (1995)
Charles GRAY, et ux, Plaintiffs-Appellees,
v.
Leonard J. McCORMICK, et ux, Defendants-Appellants.
No. 94-1282.
Court of Appeal of Louisiana, Third Circuit.
October 18, 1995.
Rehearing Denied December 14, 1995.
*481 William M. Ford, Alexandria, for Charles Gray et ux.
Dan E. Melichar, Alexandria, for Leonard J. McCormick et ux.
Before DOUCET, C.J., and LABORDE, KNOLL, COOKS and PETERS, JJ.
KNOLL, Judge.
The issues on this appeal grew out of a family feud. After learning that their daughter, Barbara M. Gray, her husband, Charles, and their two children (hereafter the Grays) were experiencing financial difficulties in Texas, Leonard J. McCormick and his wife, *482 Vivian (hereafter the McCormicks), opened their house to them where they stayed rent-free for approximately nine months. During that time, the McCormicks mortgaged 1.5 acres of their property and then built a Jim Walter shell-home on the mortgaged property; the McCormicks had to obtain the financing because the Grays were unable to receive credit approval due to their recent bankruptcy. After the shell-home was completed, the McCormicks allowed the Grays to complete as much of the interior as they wished so that the Grays could reside there.
During the six years that the Grays lived in the house, they made monthly mortgage payments of $319.60 to MidState Homes, Inc. (MidState), the McCormick's mortgagee, and made improvements of $6,074.69 to the house.[1] After a disagreement arose over the Grays' inability to secure financing to purchase the house and release the McCormicks from any obligation on the indebtedness, the McCormicks evicted the Grays. The Grays then sued the McCormicks for damages based on unjust enrichment and detrimental reliance. The trial court found that the McCormicks and the Grays entered into a contract for a gratuitous use of the home and awarded damages as follows: (1) reimbursement for the $23,011.20 of mortgage payments the Grays made; (2) $6,074.69 for the improvements made by the Grays; and (3) mental anguish damages of $7,500 each for Barbara and Charles. The trial court also granted the McCormicks' reconventional demand and awarded them damages of $2,783.68 for repairs they were required to make when the Grays damaged the property at the time of their eviction.
The McCormicks appeal, contending that the trial court erred: (1) in finding that a gratuitous contract existed between the McCormicks and the Grays; (2) in failing to find that an onerous, bilateral contract existed between them; (3) in finding that the McCormicks failed to perform their obligation under the agreement between them; (4) in enforcing an oral contract for the transfer of immovable property by awarding damages for nonperformance of the transfer; (5) alternatively, in failing to deduct an amount from any recovery due the Grays for rental value of the property; and (6) alternatively, in awarding nonpecuniary damages.
The Grays answered the appeal to increase the damage award and to reverse the trial court's granting of the McCormicks' reconventional demand.
We reverse and render.

FACTS
We adopt the trial court's summarization of the pertinent facts that it incorporated in its written reasons for judgment as follows:
In 1986 Mr. and Mrs. Gray decided to sell their home in Duncan, Texas. The testimony is conflicting regarding the circumstances leading up to the sale but that information is of no importance to this court's final decision.
In any event, the Grays moved to Deville, Louisiana after their home was sold in August 1986. Both Mr. and Mrs. Gray testified that Mr. McCormick, Mrs. Gray's father, approached them about moving to Louisiana in the early part of 1986. The undisputed testimony reveals that Mr. McCormick offered to donate five acres of land on which the Grays could build a home. The donation of the land did not include timber or mineral rights. The Grays attempted to negotiate with Jim Walter Homes, Inc., for the construction of a home in May 1986. When the application was declined the McCormicks agreed to put the home in their name with the understanding that the property and house would be transferred to the Grays at a later date. Mr. Gray contended at trial that there was never any time specified within which they were to effectuate the transfer. On the other hand, Mr. McCormick testified that he specifically set a time of one year within which time the property was to be transferred and he and his wife would be relieved of the debt....
* * * * * *

*483 [W]hat the evidence shows is that Mr. and Mrs. Gray were never asked to pay rent to the McCormicks although they did pay the monthly mortgage note [for 72 months]. Further, the Grays completed [some of] the interior and some exterior work on the home using their own money and labor, in most instances.
Additionally, we find the following facts important in the present case. In August 1992, Mr. Gray attempted to have the McCormicks transfer the property to him and Barbara; at that time he presented Mr. McCormick with a cash deed and assumption of mortgage document that he had prepared. However, Mr. McCormick refused to sign because the documents did not release the McCormicks from the indebtedness. In January 1993, after learning that the fire insurance on the house and the mortgage payment due that month had not been paid, Mr. McCormick served an eviction notice on the Grays. In the latter part of January 1993, the Grays left the premises.
Mr. and Mrs. Gray spent $5,293.55 of their own funds when they partially completed the McCormick home.[2] In addition to the use of their own funds, Mr. McCormick was able to obtain grant money from two agencies, Louisiana Housing Assistance Corporation (LHAC) and Cenla Community Action Committee (CCAC), to assist the Grays in doing further work on the house. LHAC provided grant money in the sum of $6,535.85 to do some of the sheetrock, ceilings, window trimming, and baseboards, and CCAC provided a weatherization grant of $1,050 for skirting around the house and insulation. In their action against the McCormicks the Grays did not seek reimbursement of the grant funds received from LHAC and CCAC.

GRATUITOUS USE CONTRACT
The McCormicks first contend that the trial court erred in finding that they agreed to give the Grays the gratuitous use of the house and 1.5 acre tract of land on which the house was located. They argue that the Grays failed to present evidence that preponderated that there was an agreement among the parties that the Grays would have the gratuitous use of the property.
The laws pertaining to the formation of a contract are well recognized in our Civil Code. A contract is an agreement by two or more parties by which obligations are created, modified, or extinguished. La.Civ.Code art. 1906. An obligation is a legal relationship by which a person is bound to render a performance in favor of another. Performance may consist of giving, doing, or not doing something. La.Civ.Code art. 1756. Obligations arise from contracts and other declarations of the will and may also arise directly from law, despite the declaration of will, in instances such as wrongful acts, the management of the affairs of another, unjust enrichment and other acts or facts. La.Civ. Code art. 1757.
It is well settled that a party who demands performance of the obligation must prove the existence of the obligation by a preponderance of the evidence. Bordlee v. Pat's Const. Co., 316 So.2d 16 (La.App. 4 Cir.1975). A contract is gratuitous when one party obligates himself toward another for the benefit of the latter, without obtaining any advantage in return. La.Civ.Code art. 1910. A contract is onerous when each party obtains an advantage in exchange for his obligation. La.Civ.Code art. 1909. The concept of "advantage" referred to in Article 1909 includes the "service, interest or condition" mentioned in La.Civ.Code art. 1774 (1870). La.Civ.Code art. 1909, cmt. (b).
In the case sub judice, whether we consider the McCormicks' first offer to donate five acres to the Grays or their subsequent agreement to enter into a mortgage contract with MidState for the construction of a home on 1.5 acres, we find that the evidence preponderates that the McCormicks *484 expected the Grays to pay for the house. Mr. Gray said that he was responsible for making the monthly mortgage payment, that he paid the mortgage note to MidState each month for over five years, and that he and his wife were responsible for the payment of the hazard insurance premiums on the house. Also, as indicative of their understanding, the McCormicks testified that although they incurred the indebtedness to MidState in their name, they always expected that the Grays were responsible for the monthly mortgage payments.
Based on this evidence, we find that there was no basis in law for the trial court to hold that the McCormicks obligated themselves to provide the Grays with the gratuitous use of the house that they had constructed. Accordingly, we conclude that the trial court erred as a matter of law in construing the evidence as establishing a gratuitous use contract.
As an ancillary factual finding, the trial court dismissed the McCormicks' contention that the Grays were to release the McCormicks from the mortgage indebtedness within one year of the construction of the home. The Grays testified that there was never such an understanding. The trial court held that the evidence failed to support the McCormicks' assertion.
It is well settled that the factual findings of the trier of fact are reviewed under the manifest error/clearly erroneous standard of review. To set aside the trial court's factual findings, we must determine from the record that a reasonable factual basis did not exist for the trial court's findings and that the findings are clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). In the case sub judice, the trial court was presented with diametrically opposing evidence on this point. The cases are legion in number that hold that in instances where there is conflicting trial testimony, an appellate court will not disturb a trial court's factual determination. The trial court observed the testimony of the opposing litigants, weighed their credibility, and determined that the Grays' factual assertion was the most believable under the circumstances presented. After carefully reviewing the record, we cannot say that the trial court was manifestly wrong in making this determination.
Furthermore, we find that the concept of waiver of rights is applicable herein. Contracting parties are free to waive benefits that the law has established in their favor where it is not expressly or impliedly prohibited by law, when the waiver does not affect the rights of others, and is not contrary to the public good. La.Civ.Code arts. 11 and 1971. Waiver is usually defined as a voluntary and intentional relinquishment of a known claim. Big River Const. v. University Club I Apts., 598 So.2d 542 (La.App. 1 Cir. 1992). Furthermore, as stated in Estoup Signs v. Frank Lower, Inc., 10 So.2d 642 (La.App.Orl.1942):
"A waiver occurs, takes place, or exists when one dispenses with the performance of something he is entitled to exact or when one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forebears to do something the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it."
Id. at 645.
Applying these well established codal and jurisprudential standards, we find that even if the McCormicks may have originally agreed with the Grays that refinancing and release from the mortgage indebtedness was to take place within a year, their forbearance of approximately six years constituted a waiver of that right.
Having found that the trial court mischaracterized the legal relationship of the Grays and McCormicks and having found that the McCormicks waived their rights to restrict their legal relationship with the Grays to one year, we find it necessary to categorize the legal relationship that existed until the Grays left the McCormicks' home.

NATURAL OBLIGATION
A natural obligation is created under circumstances from which the law implies a particular moral duty to render performance. La.Civ.Code art. 1760. Examples of *485 circumstances giving rise to a natural obligation are given in La.Civ.Code art. 1762 and are not considered exclusive. Muse v. St. Paul Fire & Marine Ins. Co., 328 So.2d 698 (La.App. 1 Cir.1976). La.Civ.Code art. 1761 further provides, in pertinent part:
A natural obligation is not enforceable by judicial action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed.
La.Civ.Code art. 229 recognizes a reciprocal alimentary duty of ascendants and descendants to maintain each other when they are in need. Although Article 229 is limited to providing life's basic necessities of food, clothing, shelter and health care when it is proven that either the ascendants or descendants are unable to obtain these necessities by other means or from other sources, it is nonetheless a statutory recognition of the moral duties each owes to the other.[3] See State v. Seghers, 124 La. 115, 49 So. 998 (1909) (The obligation of the parent to support the child does not arise from the marriage, but from the fact of paternity).
The record establishes that the McCormicks voluntarily incurred an indebtedness to aid the Grays, who could not individually accomplish the building of the home because of their financial situation. The record shows that the McCormicks would donate the land on which the house was built to the Grays, if the Grays released the McCormicks from the indebtedness. Thus conditioned, the Grays received the use and benefit of the shell-home during their occupancy. On their part, for their use and occupancy of the home, the Grays paid the MidState mortgage note monthly. Accordingly, under the circumstances of this case, we find that a natural obligation arose on the part of the Grays to pay the monthly mortgage note. See Hall v. Yarbrough's Pharmacy, Inc., 493 So.2d 814 (La.App. 2 Cir.1986).
Even though we have determined that the Grays were not the recipients of a gratuitous use contract and that only a natural obligation existed between them and the McCormicks, we will now address the question of whether the trial court properly reimbursed the Grays for the mortgage payments they paid and the improvements they made to the home. Thus, we must still analyze the facts in light of detrimental reliance and unjust enrichment.

BASIS FOR THE GRAYS' RECOVERY
The McCormicks next contend that the trial court erred in supporting its award of damages on either a theory of detrimental reliance or unjust enrichment. They argue that the trial court's award of damages to the Grays under either theory is tantamount to enforcement of an oral contract for the transfer of immovable property.
From the outset, we note that the trial court correctly determined that the Grays failed to establish that they were entitled to be recognized as the owners of the Jim Walter home and the immovable property on which the home was built. Referring to La.Civ.Code art. 1839 for the strict legal requirements for the transfer of immovable property,[4] the trial court decided that although the Grays actually possessed the house and lot, the parties did not execute an authentic act or act under private signature that would have transferred the house and lot from the McCormicks to the Grays. The trial court further properly concluded that the Grays did not establish the oral transfer exception recognized in Article 1839, since the McCormicks did not admit under oath that they transferred the immovable property to the Grays. On this basis, we find that the trial court correctly held that *486 the Grays improved immovable property they did not own.

Detrimental Reliance
The Grays first urge us to uphold the trial court's award of damages on the theory of detrimental reliance. The evidence does not support detrimental reliance.
As recognized in John Bailey Contractor, Inc. v. State Through DOTD, 439 So.2d 1055 (La.1983), a requirement for recovery under the theory of detrimental reliance is that the party seeking recovery must have had a justifiable reliance in the representation. In connection with that requirement, La.Civ.Code art. 1967 specifically states that "Reliance on a gratuitous promise made without required formalities is not reasonable." In Andrus v. Andrus, 93-856 (La. App. 3 Cir. 3/2/94); 634 So.2d 1254, we held that reliance based upon a donation of immovable property without adherence to the formal, written requirements provided by law was not justified. See also Kibbe v. Lege, 604 So.2d 1366 (La.App. 3 Cir.), writs denied, 606 So.2d 540, 606 So.2d 541 (La.1992). Applying this reasoning to the case sub judice, we find that the Grays were not justified in their reliance on the McCormicks' oral promise to donate immovable property to them. Accordingly, we cannot use the legal theory of detrimental reliance to support the trial court's damage award.

Unjust Enrichment
The Grays' next argument is that the trial court's damage award was proper under the equitable doctrine of unjust enrichment. Unjust enrichment is firmly rooted in our Civil Code and has well-defined elements. As explained in Kirkpatrick v. Young, 456 So.2d 622 (La.1984):
In 1967 this court recognized that the moral maxim contained in La.C.C. art. 1965 [now art. 2055] "that no one ought to enrich himself at the expense of another" provides the basis for an action for unjust enrichment. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). We have also enumerated the five prerequisites necessary to support such an action: 1) there must be an enrichment, 2) there must be an impoverishment, 3) there must be a causal relationship between the enrichment and the impoverishment, 4) there must be an absence of justification or cause for the enrichment or impoverishment, and 5) there must be no other remedy at law.
Id. at 624.
Elaborating on the elements of unjust enrichment, former Justice Albert Tate, Jr. fleshed out in practical terms the five requisites that a plaintiff must meet in order to prevail in an action for unjust enrichment:
(i) the defendant receives an "enrichment" (an economic benefit received by his estate, whether by an addition to it or by a prevention of an economic detriment to it, without his furnishing compensation intended to be adequate for it);
(ii) the plaintiff has sustained an "impoverishment" (an economic detriment suffered by the plaintiff's estate, whether because of the loss of a previously acquired asset or because of the prevention of justified expectation of gain);
(iii) the enrichment and the impoverishment are connected (the economic benefit to the one patrimony results from the economic detriment to the other, either by direct transfer or indirectly through an intervening party, without any corresponding transfer of compensation intended to be adequate);
(iv) no legal cause justifies the enrichment (in the sense that no lawful contract or provision of law was intended to permit the enrichment or to prevent the impoverishment or to bar attack on the enrichment or the impoverishment); and
(v) no other legal remedy is practically available to the impoverished plaintiff by which the impoverishment might be or might reasonably have been avoided (this is the principle of "subsidiarity" by which the extraordinary remedy of unjustified enrichment, not provided by the Civil Code, is regarded as unavailable where another legal remedy could have prevented the impoverishment).
*487 Tate, The Louisiana Action for Unjustified Enrichment, 50 Tul.L.Rev. 883 (1976) and 51 Tul.L.Rev. 446 (1977).
In analyzing the Grays' contention that the trial court's award can be justified under the theory of unjust enrichment, we find it necessary to differentiate the sums the Grays expended to partially complete the home from the monthly mortgage payments they made.
Earlier we stated that the Grays had a natural obligation to pay the monthly mortgage note that the McCormicks owed MidState. A natural obligation is not enforceable by judicial action. Whatever has been freely performed in compliance with a natural obligation may not be reclaimed. La. Civ.Code art. 1761. Accordingly, the mortgage payments tendered by the Grays are not refundable.
Applying the law of natural obligations to the case sub judice, it becomes evident that unjust enrichment cannot be relied upon to substantiate the trial court's inclusion of the monthly mortgage payments in the reimbursement due the Grays. Under the fourth prerequisite of unjust enrichment, the law of natural obligations bars an attack by the Grays on the enrichment the McCormicks received when the Grays paid the monthly mortgage note. Therefore, we find that the trial court erred as a matter of law in allowing the Grays to recover these sums.
However, unlike the mortgage payments, the Grays did not have a natural obligation to make improvements to the house. Rather, the Grays' improvement of the home stemmed from their need to make the shell-home habitable.
Since under the legal theory of unjust enrichment, it is essential that the plaintiff not have any other legal recourse, our initial inquiry must be whether the Grays have shown that no other remedy at law existed which would allow them to recoup the amounts they spent to improve the home. As shown in Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569 (La. 1989), this element generally involves the question of whether there exists a contract under which the plaintiffs may recover.
In the case sub judice, as discussed above, we found that the trial court properly determined that the immovable property was not transferred because it was not reduced to writing and there was no admission under oath by the McCormicks that they transferred the property to the Grays. We also found that there was no proof established in the record that the McCormicks granted the Grays the gratuitous use of the house and property. Accordingly, we find that the record establishes that the Grays had no other remedy at law to recover the improvement expenses from the McCormicks. Notwithstanding this determination, we conclude that the trial court erred in making an award based on unjust enrichment for the improvement expenses.
There essentially was no dispute that the Grays expended funds when they improved the McCormicks' home. This showing of payment only goes toward establishing the Grays' impoverishment, the second prerequisite for recovery. Brignac v. Boisdore, 288 So.2d 31 (La.1973). The impoverishment element is met only when the factual circumstances show that the impoverishment was not a result of the plaintiffs' own fault or negligence or was not undertaken at his own risk. Charrier v. Bell, 496 So.2d 601 (La.App. 1 Cir.), writ denied, 498 So.2d 753 (La.1986). In the case sub judice, the record clearly shows that the Grays knew that the McCormicks would only transfer the property if they were released from the MidState indebtedness. Despite this knowledge, the evidence shows that the Grays, knowing that the McCormicks burdened their property with a real estate mortgage, only presented assumption of mortgage documents for the McCormicks' consideration. Furthermore, no explanation was put forth by the Grays to show why they did not attempt to release the McCormicks from the mortgaged indebtedness. Considering the six year lapse between the commencement of their use of the house and their eviction, it appears to us that the Grays' loss resulted from their own failure to act and improvements made by them during that time were done at their own risk.
Moreover, we do not find that the Grays were impoverished by the funds they expended. *488 The record bears out that the improvements made by the Grays were necessitated to make the shell-home habitable. Once made, the Grays were the beneficiaries of those improvements for a six year period. Additionally, the Grays benefitted from the McCormicks' procurement of housing grants at no cost to them and significantly enhanced their use of the house. In such manner, the Grays actually gained the use of a habitable home and thus were not impoverished during their six year habitation.
Accordingly, under the circumstances presented herein, we find that the Grays failed to prove the type of impoverishment necessary to substantiate a claim for unjust enrichment. Therefore, we likewise conclude that the trial court erred in using unjust enrichment as a vehicle for the Grays to recover the sums they expended to improve the McCormicks' home.

MENTAL ANGUISH DAMAGES
The McCormicks contend that the trial court erred in awarding nonpecuniary damages of $7,500 each to Mr. and Mrs. Gray. We agree.
La.Civ.Code art. 1998 provides that nonpecuniary damages can be awarded where a principal object of a contract is intellectual enjoyment. In the present case, since we find that the Grays failed to prove that a contract existed with the McCormicks, it is clear that nonpecuniary damages cannot be awarded. Simply stated, without a contract, the award of nonpecuniary damages under Article 1998 does not come into play. Accordingly, we must reverse the trial court's award of nonpecuniary damages.

GRAYS' ANSWER TO APPEAL
The Grays contend that the trial court erred in only awarding them the actual costs of the improvements they made instead of awarding them for the enhanced value of the McCormicks' property because of their labor. Since we have determined that the trial court's award of damages to the Grays was not proper under unjust enrichment and they have asserted no other basis to justify recovery, we pretermit discussion of this aspect of their answer to the appeal.

McCORMICKS' RECONVENTIONAL DEMAND
In their pleadings in the trial court, the McCormicks asserted that if the Grays were entitled to judgment, they (the McCormicks) were entitled to an offset of $2,783.68 for damages done to the house when the Grays left the premises. Since we have determined that the Grays are not entitled to judgment from the McCormicks, we reverse the trial court's judgment in favor of the McCormicks and dismiss their reconventional demand with prejudice against the Grays.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed. Costs of the trial court and this appeal are assessed to the Grays.
REVERSED AND RENDERED.
DOUCET, C.J., dissents in part and assigns reasons.
DOUCET, Chief Judge, dissenting.
I agree with the majority on all issues except that of "unjust enrichment." Justice Tate's articles, upon which the majority rely, clearly allow for reimbursement by a plaintiff who "... has sustained an `impoverishment' (an economic detriment suffered by plaintiff's estate ...)." Justice Tate's articles were also relied upon by our brethren of the fourth circuit in South Central Bell Telephone Co. v. Rouse Company of Louisiana, 590 So.2d 801, 804 (La.App. 4 Cir.1991) wherein the court stated:
To recover under a theory of unjust enrichment there must be: 1) an enrichment; 2) an impoverishment; 3) a connection between the enrichment and the impoverishment; 4) an absence of justification or cause for the enrichment and impoverishment; 5) the unavailability to the plaintiff of any other remedy at law. Vandervoort v. Levy, 396 So.2d 480 (La. App. 4th Cir.1981); Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967). See Albert Tate, Jr., The Louisiana Action for Unjustified Enrichment: A *489 Study in Judicial Process, 51 TUL. L.REV. 446 (1977); Albert Tate, Jr., The Louisiana Action for Unjustified Enrichment, 50 TUL.L.REV. 883 (1976).
To recover under the theory of detrimental reliance it must be proven that: 1) a representation was made; 2) there was justifiable reliance on that representation; 3) a change in position to one's detriment because of that reliance. La.C.C. art. 1967; Edinburgh v. Edinburgh, 523 So.2d 893 (La.App. 4th Cir.1988).
The case sub judice appears to me to be analogous to the situation described by the court in Edinburgh, Id. at 894:
We find that defendant is entitled to recover under a theory of detrimental reliance. In order to recover under this theory, a plaintiff must prove that: (1) a representation was made; (2) justifiable reliance upon that representation; and (3) a change in position to one's detriment because of the reliance, La.Civ.C. art. 1967; John Bailey Contractor, Inc. v. State, Dept. of Tr. & Dev., 439 So.2d 1055 (La.1983). Defendant has met these requirements. Based upon Ms. Dorsey's verbal promise to leave the house to him and his wife, which was later reduced to writing, he assumed certain financial responsibilities. He was under no obligation to assume these responsibilities, but did so in reasonable reliance upon Ms. Dorsey's promise. Defendant, therefore, is entitled to recover for the money he expended on the house in reliance upon Ms. Dorsey's promise that he would inherit an undivided one-half interest therein.
Plaintiff's claim for reimbursement of monies spent to improve the Jim Walter house is further supported by Howell v. Rhoades, 547 So.2d 1087, 1089 (La.App 1 Cir.1989), wherein the court stated:
... No written contract was ever drafted... Under these facts, we believe ... [t]he contract was void. LSA-C.C. art. 1927; see Haas v. D'Avanzo, 45 So.2d 104 (La. App.2d Cir.1950).
* * * * * *
... `Quantum meruit' has been employed in several contexts in Louisiana: first, a contractual quantum meruit, when a contract is implied from the circumstances, but no agreement as to price has been reached; or, in a quasi contractual setting, when the plaintiff has conferred a benefit on defendant in pursuance of a contract supposedly valid but in truth void. Comments, Quantum Meruit in Louisiana, 50 Tul.L.Rev. 631, 647 (1976); Nicholas, Unjustified Enrichment in Civil Law and Louisiana Law, 37 Tul.L.Rev. 49, 57 (1962). `Quantum meruit' protects restitution interests rather than reliance interests and here is limited to the amount that plaintiff actually lost by relying on an unenforceable contract, including reasonable profits. The measure of damages here, where the contract is void, is the benefit conferred on defendant, or her `unjust enrichment.' Nicholas, supra, at 57. [Emphasis added.]
Finally, I find the plaintiff's position on this issue is fully supported by prior action of this court. In Morris v. People's Bank & Trust Co. of Natchitoches, 580 So.2d 1029, 1033, 1034 (La.App. 3 Cir.), writ denied, 588 So.2d 101, 102 (La.1991), a panel of this court explained:
Morris asserts in his petition a cause of action for detrimental reliance. La.C.C. art. 1967 changed Louisiana law by incorporating detrimental reliance as a basis for the enforceability of obligations. Lack art. 1967, comment (a); Kethley v. Draughon Business College, 535 So.2d 502 (La. App.2d Cir.1988). Under Article 1967, a promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment. La.C.C. art. 1967, comment (d). The court may grant either specific performance or damages to the disappointed promisee. Kethley. The article provides:
Art. 1967. Cause defined; detrimental reliance
Cause is the reason why a party obligates himself.
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery *490 may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
The doctrine of detrimental reliance was codified in 1985, but it is not actually new in Louisiana. Our courts have long recognized the German theory of culpa in contrahendo, which permits a plaintiff to recover damages which result from his change of position caused by reliance upon an unenforceable contract. See Note, ObligationsMeasure of Recovery for Change of Position Under Unenforceable ContractCulpa in Contrahendo, 25 Tul. L.Rev. 133 (1950), and cases cited therein.
Nevertheless, the fact that detrimental reliance is now part of our Civil Code is significant. It has been suggested that Article 1967 will allow Louisiana courts to "start their analysis of a promise from the question of the harm that it may have caused instead of what the promisor is getting for his promise or what his motive was for making it." A Student Symposium, The 1984 Revision of the Louisiana Civil Code's Articles on Obligations: Detrimental Reliance, 45 La.L.Rev. 747, 769 (1985).
The language of Article 1967 indicates that a cause of action for detrimental reliance will arise primarily under contract law. "[I]ts principal utility will be in handling defective contracts. These agreements are not legal contracts because one of the elements of contracts is missing capacity, consent, cause, or objector because they violate a law of public policy." A Student Symposium, 45 La.L.Rev. at 767.
In Coleman v. Bossier City, 305 So.2d 444 (La.1974), the Supreme Court discussed reliance damages in the context of culpa in contrahendo. The court declined to apply the doctrine, finding instead recovery on the basis of unjustified enrichment. The opinion is significant, however, because it raised the question of whether a promisee would be protected when his reliance damages could not be measured by the value of benefits conferred on the other party"that is, when the contractual fault did not correspond to unjust enrichment." Herman, Detrimental Reliance in Louisiana LawPast, Present, and Future (?): The Code Drafter's Perspective, 58 Tul.L.Rev. 707, 746 (1984).
Article 1967 answers that question clearly when it requires the promisee's reliance to be reasonable.
* * * * * *
... [I]n Moore v. Smith, 521 So.2d 742 (La.App.2d Cir.1988), the promisee, Moore, was in good faith when she entered into an agreement with Smith, her stepfather, whereby she agreed to renounce her interest in her mother's succession in exchange for Smith's promise to leave the succession property to her upon his death. The entire agreement was null, as it involved "an intricate tangle of prohibited acts." 521 So.2d at 743. Yet Moore was allowed to recover damages for detrimental reliance. The court reasoned:
If the plaintiffs knew that the contract was prohibited, they would not be allowed to assert their wrong doing to claim a benefit from it. However, the record is completely void of evidence to support the supposition that the plaintiffs knowingly embarked on an illegal scheme. In fact, during the negotiations, Mr. Smith was represented by counsel who drew up the documents and was perhaps aware of the contract; the plaintiffs were not represented. If anyone should be charged with knowledge that article 1976 would invalidate the transaction, it is Mr. Smith. This is clearly not a case of the plaintiffs `alleging their own turpitude.'
521 So.2d at 744.
Similarly, in A.V. Smith Construction Co., Inc. v. Maryland Casualty Co., 450 So.2d 39 (La.App.3d Cir.1984), this court allowed recovery for unjust enrichment even though the contract between the parties was void malum prohibitum. We held that because the parties were in good faith, the contractor was allowed to recover in quantum meruit.
*491 The afore cited cases convince me that the Grays have a valid claim for reimbursement of the funds they expended to improve the house they were occupying. Hence, I would award the Grays the $4,993.22 ($29,085.89 less mortgage, insurance and transfer costs) they spent on improving the shell of a house, and I would also award defendants credit, under their reconventional demand, for the repairs required ($2,783.68) to the house by the Grays' unwarranted conduct upon vacating the premises.
Accordingly, I would reverse the trial court on all issues except that for the plaintiffs' small claim for unjust enrichment awarded above and the defendants' reconventional demand for $2,783.68.
Therefore, for the foregoing reasons, I dissent.
NOTES
[1] From our reading of the record, we arrive at a slightly lesser amount. However, since neither sets of litigants objected to the trial court's computation and since it does not affect our disposition of the case, we will accept the trial court's figure.
[2] The Grays also spent $697 for a heating and air conditioning system for the house. Since the Grays removed the unit from the McCormick house when they left, they did not seek reimbursement for this expenditure. Our figure also does not include the $256 the Grays spent on insurance and the $825.47 they paid to MidState for the failed sale with assumption of mortgage. Thus, the $5,293.55 figure represents actual funds used by the Grays for physical improvements made to the McCormicks' house.
[3] In making this statement, we do not imply that the McCormicks were bound to construct a home for the Grays. Rather, we utilize the codal article as a source for our finding that a moral obligation came into existence since the Grays had the use and occupancy of the home.
[4] La.Civ.Code art. 1839 provides, in pertinent part, as follows:

A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.