# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 14-807

**R. ALAN KITE**

**VERSUS**

**KITE BROS., LLC, ET AL.**

### Consolidated with 14-808

**KITE BROS., LLC, ET AL.**

**VERSUS**

**ALAN KITE, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NOS. 2006-0241 AND 2007-1110
HONORABLE F. RAE SWENT, DISTRICT JUDGE AD HOC

**\*\*\*\*\*\*\*\*\*\***

### PHYLLIS M. KEATY
### JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Jimmie C. Peters, Marc T. Amy, Billy Howard Ezell, Phyllis M. Keaty, John E. Conery, and D. Kent Savoie, Judges.


**Cooks, J., dissents and assigns written reasons.**

**Peters, J., assigns additional reasons.**

**Amy, J., concurs in part, dissents in part, and assigns reasons.**

**Conery, J., joins the opinion but dissents in one part for reasons assigned by Judge Cooks.**


**MOTION FOR PARTIAL DISMISSAL GRANTED;
JUDGMENT AMENDED IN PART, REVERSED IN PART,
AFFIRMED AS AMENDED, AND RENDERED.**

**Kenneth Michael Wright**
**Kenneth Michael Wright, LLC**
**203 West Clarence Street**
**Lake Charles, Louisiana 70601**
**(337) 439-6930**
**Counsel for Plaintiff/Appellant:**
 **R. Alan Kite**

**Scott J. Scofield**
**Andrea Albright Crawford**
**Phillip W. DeVilbiss**
**Scofield, Gerard, Pohorelsky,**
**Gallaugher & Landry**
**Post Office Drawer 3028**
**Lake Charles, Louisiana 70602**
**(337) 433-9436**
**Counsel for Defendants/Appellees:**
 **Kite Bros., LLC**
 **Robert J. Kite**

**KEATY, Judge.**

Son appeals a judgment in favor of his father,[1] denying son's objection of lack of jurisdiction, dismissing son's remaining claims against his father with prejudice, rendering judgment against son on father's reconventional demand, and awarding father attorney fees. Father files a motion for partial dismissal of son's appeal. For the following reasons, we grant father's motion for partial dismissal. The trial court's judgment is amended in part, reversed in part, affirmed in part, and rendered.

## PROCEDURAL HISTORY

This case, which grew out of a feud between a father and two of his sons, has previously come before this court. See *Kite v. Kite Bros.*, 11-334, 11-335, pp. 1-4 (La.App. 3 Cir. 10/5/11), 74 So.3d 1266, 1267-69, *writ denied*, 11-2436 (La. 1/13/12), 77 So.3d 966, which we now quote for the procedural history[2] of this sordid ordeal:

> In 1961, Robert Kite (Mr. Kite) cofounded a recreational vehicle dealership with his brother. The company was originally formed as a corporation, Kite Bros., Inc. On April 30, 1998, Kite Bros., Inc. became inactive when Mr. Kite formed a limited liability corporation, Kite Bros., L.L.C. Since its formation, Mr. Kite has been the sole member, manager and owner of Kite Bros., L.L.C.
>
> At different points in the 1980s, Mr. Kite's two sons, Alan Kite and Jeff Kite, began working for the corporation. When Kite Bros., L.L.C. was formed, both brothers were employed there, although the record indicated Alan never had employment contracts with either Kite Bros., Inc. or Kite Bros., L.L.C. Over time, Alan was given the authority to write checks on the company account, including payroll checks. However, it was testified that neither Alan nor Jeff had authority to change their salary or commission rate.

---

[1] As we later explain, the father, Mr. Robert Kite, is the sole owner of Kite Bros., LLC (Kite Bros.). Therefore, when we use the term "Kite," we are referring to Mr. Kite and Kite Bros.

[2] The quoted language that follows is being offered for background information only and has not been considered by this court as evidence for purposes of this appeal.

Mr. Kite testified he was always very generous to Alan, and paid him substantially more than other salesmen with the company, receiving a salary of $1,500.00 per week. Alan also received a commission based on a written schedule which Mr. Kite created. Alan was provided with a company truck and a company credit card. Testimony revealed Alan consistently made in excess of $200,000.00 in annual compensation.

In September of 2005, Alan and Jeff, on their own, raised their salaries. The raises Alan took were significant, at times more than triple his previous weekly salary. Alan and his brother also agreed they would take another ten percent (10%) of all revenues of Kite Bros., L.L.C. Alan testified he and his brother would continue to take the increased salaries and the cut of revenues "until everything settled down after the storm [Hurricane Rita]."

It was undisputed that neither Alan nor Jeff cleared their raises nor the decision to take ten percent (10%) of the revenues with Mr. Kite. In January of 2006, Mr. Kite discovered Jeff's salary had been raised without his permission. Mr. Kite told Jeff to return his salary to the authorized level. Mr. Kite then proceeded to revoke Alan and Jeff's authority to write checks and cancelled their credit cards. Despite this, Alan submitted a pay sheet the following week documenting a salary due of $5,000.00, rather than the agreed upon $1,500.00 per week.

On January 19, 2006, both Alan and Jeff left the employ of Kite Bros., L.L.C. It was disputed as to whether the brothers left on their own accord or were fired. Not in dispute is that when Alan left the premises, he took with him business papers belonging to Kite Bros. L.L.C. without permission. Among the papers removed were records which documented the deferred commissions due to Alan.

Mr. Kite filed a criminal complaint over the papers removed by Alan. When the investigating officer contacted Alan, he was assured by Alan that the papers would be returned the next day. However, Alan did not return the papers and kept them in his possession until August of 2006, when his attorney returned some of the papers to Mr. Kite's attorney. Alan has continued to remain in possession of some of the business papers to this date.

According to Mr. Kite, when Alan left he wanted to make sure Alan received everything he was entitled to in terms of compensation. However, reaching an exact figure owed was difficult due to the lack of documentation because of Alan's removal of certain business records. Mr. Kite testified, to be safe, he simply wrote Alan a check for $100,000.00, minus employment taxes. He believed this more than adequately covered any compensation Alan was due. Alan acknowledged receiving this check in February of 2006.

In March of 2006, Alan and Jeff filed a lawsuit against their father and Kite Bros., L.L.C. Several claims were alleged, including: (1) retaliatory discharge; (2) detrimental reliance; (3) defamation; (4) failure to pay final wages; (5) failure to deliver insurance policies; (6) failure to deliver retirement accounts; and (7) a claim for an injunction ordering the return of a bass boat. Mr. Kite and Kite Bros., L.L.C. brought reconventional demands against the brothers for taking unauthorized salaries and raises.

Mr. Kite, stating he was saddened by the family squabbling, agreed during a mediation to settle Alan and Jeff's claims. The settlement agreement required that Mr. Kite be treated with respect and he be granted access to his grandchildren. Asserting that Alan did not uphold the agreement, Mr. Kite filed a lawsuit seeking to declare the mediated agreement null. That lawsuit was consolidated with the suit stemming from Alan and Jeff's claims. The mediated agreement was rescinded.

During that time period, Alan and Jeff began a competing RV dealership, Kite RV, L.L.C. Shortly after its inception, Alan and Jeff began arguing over control of the company. As a result, Jeff reconciled with his father and dismissed his claims against him.

On January 21, 2010, Mr. Kite moved for summary judgment dismissing Alan's claims. The motion for summary judgment was supported with numerous affidavits and depositions supporting the granting of summary judgment.

In his argument to defeat the motion for summary judgment, Alan argued simply that there were several genuine issues of material fact that precluded summary judgment. The trial court ordered Alan to "identify in writing the specific statements" that created the genuine issues of material fact. However, Alan did not provide the court with any such written documentation.

On July 16, 2010, the trial court issued written reasons granting partial summary judgment, dismissing several, but not all, of Alan's claims. The trial court granted summary judgment on the defamation claim, finding "the fact that Alan did do what any reasonable person would see was stealing would be a complete defense to the action for defamation." The trial court also granted summary judgment on Alan's ownership claim based on the doctrine of detrimental reliance, finding "Alan has acknowledged elsewhere that [Mr. Kite] was the sole owner of [Kite Bros.,] LLC and Alan disclaimed any ownership of the [Kite Bros.,] LLC in his divorce proceedings. The trial court also granted summary judgment dismissing Alan's retaliatory discharge claim. It was acknowledged by both parties at the hearing that the claim regarding failure to deliver retirement accounts, as well

3

as the claim for an injunction ordering the return of a bass boat, were moot. The judgment did not dismiss Alan's two other claims alleging the failure to pay final wages and deliver insurance policies.

At Alan's request, the trial court stated that these partial summary judgments were final pursuant to La.Code Civ.P. art. 1915(B)(1). Alan then filed the present appeal . . . .

In an opinion dated October 5, 2011, a panel of this court affirmed the trial court's grant of partial summary judgment in favor of Kite regarding Alan's defamation, ownership, and retaliatory discharge claims. *Id.*

Upon motion of Kite, the trial court set the trial of its reconventional demand for April 1, 2013. On the Friday before trial, Alan's attorney emailed Kite's attorney to inform him that Alan's son had several biopsies taken from his thyroid the previous day, that he would be seeking cancer treatment the next week if he tested positive for cancer, and that Alan would want to be with him should that be the case. When the matter was called for trial on April 1, 2013, Alan's counsel made an oral motion for a continuance on the basis that Alan's son's test results indicated that he had cancer and that he may be seeking treatment at M. D. Anderson that week. After Kite's attorney informed the trial court that his client had received information that the cancer threat may not be legitimate, the court requested that Alan provide documentation from his son's physician. Pending receipt of such documentation, the trial court entertained arguments relative to an exception of prescription that had been filed by Alan. Thereafter, rather than produce the requested proof of Alan's son's medical condition, Alan's attorney gave the trial court notice that Alan had filed a Chapter 11 bankruptcy that morning which had the effect of automatically staying the state court proceeding.

Pursuant to Kite's motion for relief from stay, the bankruptcy court, by order dated June 19, 2013, modified the automatic stay: 1) to allow Kite to request that

4

the Thirty-Sixth Judicial District Court (36th JDC) sign the order that it had orally granted on February 8, 2013, granting Kite Bros. motion to establish facts pursuant to issue preclusion and law of the case principles; and 2) to allow Kite to request that the trial court in the 36th JDC set the remaining issues pending between the parties for trial for the rendering of a final judgment on the merits, with the proviso that no trial be held before July 12, 2013, and that Kite not execute upon any final judgment except through the bankruptcy proceeding.

Thereafter, the 36th JDC reset the trial for August 1, 2013. The day before the trial, Alan filed a notice of removal to remove the matter to the United States District Court for the Western District of Louisiana (USDC) "[p]ursuant to 28 U.S.C. § 1334 and 1452 and Rule 9027 of the Bankruptcy Rules." In an effort to preserve the trial date, Kite requested an expedited hearing from the USDC. On the morning of August 1, 2013, Judge Patricia Minaldi, the judge assigned to hear the removal, held a telephone conference at which the parties and their attorneys were present, along with the judge from the 36th JDC. At the hearing, Judge Minaldi determined that the removal filed by Alan was untimely pursuant to 11 U.S.C. § 9027(a)(2). Accordingly, she ordered the matter remanded to the 36th JDC consistent with the June 19, 2013 order modifying the stay issued in conjunction with Alan's bankruptcy filing. Judge Minaldi further ordered "that all matters proceed forward in the 36th Judicial District on or after August 1, 2013 as previously scheduled." *See* August 7, 2013 Order from the USDC remanding the matter back to the 36th JDC. Judge Minaldi signed a written order memorializing the remand on August 7, 2013, and the order was filed in the 36th JDC two days later.

5

After Judge Minaldi orally pronounced the remand, the trial court in the 36th JDC held another telephone conference with the parties' attorneys during which it offered to delay the start of trial for two hours to allow Alan's attorney, who was in Lake Charles, Louisiana, time to travel to the court. In response, Alan's attorney stated that he deemed it "a jurisdictional issue, and until an order of remand is issued[,] the matter is in the Federal Court." He expressed his opinion that "under the federal jurisprudence anything that's taken is null and void until the matter is remanded," and he requested that he be allowed to confer with Alan and Alan's bankruptcy attorney. Thereafter, Alan's attorney informed the trial court that the three of them had decided that he would not be participating in the trial because they believed that the 36th JDC had no jurisdiction. The trial court responded that it would "proceed forward" as directed by Judge Minaldi. The only two witnesses to testify at trial were Mr. Kite, on his own behalf and on behalf of Kite Bros., and Mr. Charles Scarborough, a certified public accountant (CPA) whom the trial court accepted as an expert CPA with a specialty of forensic tracing of accounting records for fraud and theft. Trial was completed that afternoon, and the trial court took the matter under advisement.

The trial court issued reasons for judgment on September 17, 2013. Because the claims in Alan's main demand had been deemed false in our decision in *Kite v. Kite Bros.*, 74 So.3d 1266, and by virtue of the trial court's grant of an exception for res judicata filed by Kite that was unopposed by Alan, the trial court found that the claims brought by Alan in his main demand "had been established as false.[3]" By judgment dated December 6, 2013, the trial court: 1) denied Alan's objections

---

[3] After the exception of res judicata was heard on February 8, 2013, Kite submitted a proposed judgment, but the trial court did not sign a judgment at that time. Written judgment granting the exception was signed on September 10, 2013.

6

to the jurisdiction and authority of the 36th JDC to proceed to trial in accordance with the May 16, 2013 order of the Bankruptcy Court lifting the automatic stay and Judge Minaldi's August 1, 2013 ruling that the trial proceed forward; 2) dismissed with prejudice Alan's claims against Kite Bros. for failure to pay past-due wages on the basis that such claims were groundless and brought in bad faith; 3) dismissed with prejudice Alan's claims against Kite Bros. under the Louisiana Unfair Trade Practices Act (LUTPA) on the basis that such claims were groundless and intentionally brought by Alan in bad faith and for the purpose of harassing Mr. Kite and Kite Bros.; 4) dismissed with prejudice Alan's claims against Kite Bros. and/or Mr. Kite under the Louisiana Whistleblower Statute on the basis that such claims were groundless and intentionally brought by Alan in bad faith and for the purpose of harassing Mr. Kite and Kite Bros.; 5) rendered judgment against Alan and in favor of Kite Bros. in the amount of $29,625.00 representing the payment of a thing not owed regarding the Gum Cove property; 6) rendered judgment of rescission and damages against Alan and in favor of Kite Bros. in the amount of $182,831.00 representing the amount of fraudulently inflated salary and duplicate checks fraudulently taken by Alan; 7) rendered judgment against Alan and in favor of Kite Bros. in the amount of $20,000.00 representing the 2005 bonus paid to Alan by Kite Bros. when it was unaware of his fraud; 8) rendered judgment of rescission and damages against Alan and in favor of Kite Bros. in the amount of $100,000.00 representing the sum Kite Bros. paid Alan upon his termination to cover any potential unpaid wages which would not have been paid had it known of his fraud; 9) rendered judgment of rescission and damages against Alan and in favor of Mr. Kite in the amount of $20,000.00 for the amount he paid in conjunction with the mediated settlement which Alan failed to honor through his

fraud; 10) rendered judgment against Alan and in favor of Mr. Kite for $75,000.00 for the mental anguish, humiliation, and emotional injury intentionally caused by Alan's fraud, embezzlement, bad faith conduct, harassment, and violations of LUTPA; 11) found Alan liable to Kite Bros. and Mr. Kite, as solidary obligees, in the amount of $354,207.17 as noted in the reasons signed on November 6, 2013, and incorporated herein by reference; 12) affirmed, reiterated, and adopted its previous ruling rendered on September 10, 2013, in conjunction with the exception of res judicata filed by Kite Bros. and Mr. Kite; and 13) awarded legal interest on the awards set forth to run from the date Alan filed suit on March 6, 2006, until paid.[4]

Alan appealed the judgment and is now before this court asserting the following assignments of error: 1) the trial court committed legal error by conducting a trial when it had no jurisdiction to act; 2) the trial court erred as a matter of law in determining that Kite Bros. had a claim under La.Civ.Code arts. 2298 and 2299 regarding payment of a thing not owed regarding the Gum Cove property; 3) the trial court erred by signing a judgment not in conformity with its written reasons and without support by the law or the evidence; and 4) the trial court erred in failing to join a party necessary for a just adjudication. Kite answered the appeal seeking a modification of the judgment to increase the attorney fee award to account for the expenses it incurred in defending this appeal, which it deems frivolous. Kite also filed in this court a motion for partial dismissal of Alan's appeal based upon the peremptory exception of res judicata and the declinatory exception of lack of subject matter jurisdiction seeking to prohibit Alan

---

[4] The judgment further provided that the recovery of interest accruing post-petition is subject to federal bankruptcy law and that Kite Bros. and Mr. Kite had reserved the right to recover further costs and reasonable legal fees for the grounds set forth therein.

from basing his appeal upon a lack of authority in the 36th JDC to preside over the August 1, 2013 trial. Upon receipt, this court referred the partial motion to dismiss to the merits.

## DISCUSSION

### *The Motion for Partial Dismissal*

Kite's motion for partial dismissal of Alan's appeal is based upon its contention that Judge Minaldi's August 1, 2013 order remanding the case to the 36th JDC and ordering Alan to proceed with the trial previously scheduled that morning was a final order that was res judicata to the issues that it specifically ruled upon. Kite submits that this court is without subject matter jurisdiction to collaterally attack the order of a federal bankruptcy court. By way of supplemental brief, Kite additionally submits that Alan's notice of removal was untimely, and, thus, the 36th JDC was never divested of the jurisdiction granted to it by the bankruptcy court when it modified the stay order to allow this matter to proceed to trial. Conversely, Alan's first assignment of error is based upon his contention that the 36th JDC lacked jurisdiction to try this matter because it did not receive notice of the remand until August 9, 2013.

The June 19, 2013 order signed by the bankruptcy court modified the stay which had automatically come into effect on April 1, 2013, upon Alan's filing for bankruptcy, as follows:

> Movants [Kite Bros., LLC and Robert J. Kite] may request that the 36th Judicial District Court for the Parish of Beauregard finalize and sign the Order orally granted on February 8, 2013, granting Kite Bros.' Motion to Establish Facts Pursuant to Issue Preclusion Principles and Law of the Case Doctrine[, and]
>
> . . . Movants may request that the trial court in and for the 36th Judicial District to fix a trial date on the merits in the consolidated matters styled <u>Alan Kite and Jeffrey Kite v Kite Bros LLC and Robert</u>

9

> J. Kite, No. C-2006-0241 "B" and Kite Bros., LLC and Robert J. Kite v Alan Kite and Jeffrey Kite, No. 2007-1110-B, including the rendering of a final judgment on all remaining issues, provided that no trial may be held before July 12, 2013, provided that Movants shall not execute upon any final judgment except through this bankruptcy proceeding.

By order dated July 19, 2013, the trial judge in the 36th JDC reset the trial for August 1, 2013. The day before trial was to commence, however, Alan filed a notice to remove the matter to the United States District Court for the Western District of Louisiana (USDC) "[p]ursuant to 28 U.S.C. § 1334 and 1452 and Rule 9027 of the Bankruptcy Rules."

We conclude that the notice of removal filed by Alan was untimely. The bankruptcy removal statutes allow for removal of a case within "30 days after entry of an order terminating a stay," or within ninety days after an automatic stay has been instituted. *See* Fed. R. Bankr. P. 9027(a)(2)(A) and (B). The June 19, 2013 order signed by the bankruptcy court modified, but did not terminate, the stay that had been in place since April 1, 2013. Even if the stay had been terminated, however, Alan's July 31, 2013 notice of removal was untimely since it was not filed until more than thirty days after the stay was modified on June 19, 2013. Alternatively, the ninety-day period listed in Article 9027(a)(2)(A) would have run on June 30, 2013, ninety days after Alan filed his bankruptcy petition on April 1, 2013.

According to the August 7, 2013 order remanding this matter the 36th JDC, Judge Minaldi determined that the removal filed by Alan was untimely pursuant to 11 U.S.C. § 9027(a)(2), and she ordered the matter to "proceed forward in the 36th Judicial District on or after August 1, 2013 as previously scheduled."

10

In *New Orleans Public Service, Inc. v. Majoue*, 802 F.2d 166, 167 (5th Cir. 1986) (*disagreed with on other grounds by McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991)), the Fifth Circuit held:

> [A federal] district court's order remanding a cause to state court may not be appealed, if erroneous. 28 U.S.C. § 1447(d). . . .
>
> Not only may the order not be appealed, but the district court itself is divested of jurisdiction to reconsider the matter. Thus, even if it later decides the order was erroneous, a remand order cannot be vacated even by the [federal] district court. . . .
>
> . . . .
>
> In sum, the District Court's order remanding [the employee's] original action to the state court is *res judicata* as to the *forum.* The issue of whether [the employee's] wrongful discharge claim is pre-empted by ERISA should now be determined together with the merits, in the first instance, by the Louisiana courts.

*Id.* at 167-68. See also, 28 U.S.C. § 1452(b), titled "Removal of claims related to bankruptcy cases," which provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

Based on the forgoing law, we conclude Alan's untimely filed notice of removal did not divest the state court of jurisdiction. We further conclude that the order of remand that Judge Minaldi orally pronounced on August 1, 2013, and signed on August 7, 2013, "is *res judicata* as to the *forum*" and that the merits of this dispute were properly determined "in the first instance, by the Louisiana [state court.]" *Id.* at 168. Alan acted at his own peril when he chose to let the trial proceed in his absence. Accordingly, Mr. Kite's motion for partial dismissal is granted. Because we have so ruled, Alan's first assignment of error has been rendered moot.

*Payment of a Thing Not Due*

The trial court rendered judgment against Alan and in favor of Kite Bros. for $29,625.00 "representing the payment of a thing not owed regarding the Gum Cove property." Louisiana Civil Code Article 2299 provides that "[a] person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it."

At trial, Mr. Kite testified that Alan had approached him when Alan was offered an opportunity to acquire an interest in Gum Cove. According to Mr. Kite's testimony, Alan told him that the property had to be put in one person's name in order to form a hunting club. Mr. Kite stated that he agreed to such an arrangement because, in his words, "we all gonna use it together," and because Alan had agreed at that time to deed the property back to his father upon his request. Mr. Kite described the Gum Cove property as a "fishing paradise" and a place where he had duck hunted long before and also many times after the purchase of the property. He explained that during duck season, he would bring a travel trailer to the property for his brothers, sons, and grandkids to stay in.

Despite the foregoing testimony, Mr. Kite insisted at trial that the check he wrote from the Kite Bros. account to Mayo Land and Title for $29,625.00 on June 1, 1999, represented payment of a thing not due. Alan insists that the facts do not support his father's arguments. In that regard, Alan points out that although the interest in the Gum Cove property was acquired in June of 1999, his father did not ask him to transfer the interest back to him or pay him damages until he filed his reconventional demand in this matter on June 14, 2006.

> Few concepts are as firmly rooted in our statutory law and jurisprudence as the principle that agreements as to immovable property must be in writing. To allow litigants to avoid this principle

> merely by framing their cause of action in terms of a tort would be jurisprudentially eradicating a concept as old as the Civil Code itself. We are aware that this policy may sometimes result in harsh consequences. However, these consequences were as apparent to the redactors of the Civil Code as they are to modern legislators. Nevertheless, the Louisiana legislature has consistently chosen to have interest in immovable property protected by a steadfast rule of law rather than the vagaries of an equitable case by case approach.

*Ogden v. Ogden*, 93-1413, p. 5 (La.App. 3 Cir. 9/21/94), 643 So. 2d 245, 248, *writ denied,* 94-2539 (La. 1/13/95), 648 So.2d 1339. See La.Civ.Code art. 1839, which requires that "[a] transfer of immovable property must be made by authentic act or by act under private signature." See also La.Civ.Code art. 1846, which provides that even "[w]hen a writing is not required by law, a contract not reduced to writing" for a "price or value . . . in excess of five hundred dollars . . . must be proved by at least one witness and other corroborating circumstances."

In *Gray v. McCormick*, 94-1282 (La.App. 3 Cir. 10/18/95), 663 So.2d 480, this court reversed a trial court judgment in favor of a daughter and her husband who sued the daughter's parents, the McCormicks, for unjust enrichment and detrimental reliance after the parents evicted them from a house that the McCormicks had built. The daughter, her husband, and their two daughters, the Grays, lived in the McCormicks' home for nine months, rent-free, after having filed bankruptcy. Thereafter, the McCormicks mortgaged 1.5 acres of their property and built a home on it for the Grays to live because the Grays could not obtain financing to build the home themselves. The Grays lived in the home for six years, during which time they made over $6,000.00 in improvements to the home and paid the McCormicks' $316.60 monthly mortgage note. Later, the McCormicks evicted the Grays when they were unable or unwilling to buy the home and release the McCormicks from any related indebtedness. Thereafter, the

Grays sued the McCormicks for unjust enrichment and detrimental reliance. After a trial, the trial court found that the parties had entered into a "contract for a gratuitous use of the home" and rendered judgment in favor of the Grays reimbursing them for the improvements they made to and for the mortgage payments they made on the home. *Id.* at 482. The McCormicks were awarded damages for repairs they had to make after the Grays were evicted.

Recognizing the "strict legal requirements for the transfer of immovable property" found in La.Civ.Code art. 1839, we held that the trial court properly found that the Grays "failed to establish that they were entitled to be recognized as the owners of the . . . home and the immovable property on which the home was built." *Id.* We further concluded that the trial court erred in basing its damage award to the Grays on the theory of detrimental reliance because they were "not justified in their reliance on the McCormicks' oral promise to donate immovable property to them." Louisiana Civil Code Article 1967 provides, in pertinent part, that "[r]eliance on a gratuitous promise made without required formalities is not reasonable."

The undisputed facts clearly show that the Gum Cove property was purchased for the benefit of the entire Kite family and that the entire Kite family in fact enjoyed the property for many years before this dispute arose. Moreover, nothing was put in writing to show that Alan agreed to transfer the property back to his father should he desire to be the record owner of the Gum Cove property. Given the foregoing, we conclude that the trial court erred in finding that Kite paid for a thing not due when it funded the purchase of the Gum Cove property.

We further conclude that Kite is not entitled to damages based upon the legal theories of detrimental reliance or unjust enrichment. Mr. Kite could have

14

purchased the Gum Cove property in his own name rather than in Alan's name when the property was acquired in 1999. Moreover, Mr. Kite should have put into writing any agreement that he had with Alan to have title deeded back to him upon his request. Mr. Kite did neither and must now suffer the consequences of dealing with Alan. Accordingly, we reverse that portion of the judgment against Alan and in favor of Kite Bros. for $29,625.00 which represented the payment of a thing not owed regarding the Gum Cove property.

### *Judgment Not in Conformity with Reasons*

In his third assignment of error, Alan complains that the judgment rendered in this matter is not in conformity with the trial court's factual findings in its written reasons and is not supported by the law or the evidence. Nevertheless, he accurately cites the law of this state which provides that appeals are taken from judgments, not reasons for judgment. *See Wooley v. Lucksinger*, 09-571, 09-584, 09-585, 09-586, (La. 4/1/11), 61 So.3d 507.

Citing *Nicholson v. Transit Management of Southeast Louisiana*, 00-706 (La.App. 4 Cir. 2/14/01), 781 So.2d 661, *writ denied,* 01-721 (La. 5/11/01), 792 So.2d 735, Alan contends that the trial court erred in awarding legal interest on the entire judgment against him to run from March 6, 2006, the date of judicial demand, where the law provides that judicial interest on attorney fee awards should run from the date of the judgment. We agree that the trial court erred in this regard, and we amend the judgment to provide that legal interest on the portion of the award representing the $354,207.17 in attorney fees owed by Alan to Kite Bros. shall run from the date of judgment.

Alan next contends that because he pled compensation in his answer to Kite's reconventional demand, the trial court erred in not reducing the judgment

15

rendered against him by $149,391.00, the amount which he claims was due to him in commissions from sales to Henry Alexander in 2004 to 2005 when Alan worked at Kite Bros.

Louisiana Civil Code Article 1893, entitled "Compensation extinguishes obligations," provides, in pertinent part, that:

> Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.
>
> In such a case, compensation extinguishes both obligations to the extent of the lesser amount.

In opposition to Alan's claim that the judgment against him should have been reduced due to compensation, Kite submits that Alan failed to plead such set-off with particularity, and he, likewise, failed to offer any evidence to support his burden of proof with regard to his claim. Moreover, Kite submits that this court's decision in *Ducote v. City of Alexandria*, 95-1197 (La.App. 3 Cir. 3/6/96), 670 So.2d 1378, which was relied upon by Alan in his appellant brief, supports its defense to Alan's claim.

After a thorough review of the pleadings and the evidence presented at trial, we conclude that Alan did not prove his entitlement to compensation. Even though Alan mentioned compensation, or set-off, in his answer to Kite's reconventional demand, he failed to plead that affirmative defense with particularity, and he failed to offer any evidence to prove his claim at trial. *See Ducote*, 670 So.2d 1378. On the other hand, Kite proved its claims at trial through the testimonies of Mr. Kite and Mr. Scarborough. Because Alan did not meet his burden of proof regarding compensation, there is no merit to this aspect of his third assignment of error.

Finally, Alan's appellant brief contains two sentences wherein he complains that the portion of the general damages awarded to his father for the emotional distress caused by Alan's actions is not supported by the evidence. Alan fails to support this argument with any jurisprudence.

The effects of Alan's behavior and ill will toward his father have been displayed to both the trial court and to this court over the years that these matters have been pending, and we conclude that the record provides overwhelming support for the portion of the damage award meant to compensate Mr. Kite for the emotional distress suffered at the hands of his son, Alan. This aspect of Alan's third assignment of error lacks merit.

### *Failure to Join a Necessary Party*

Louisiana Code of Civil Procedure Article 641 provides:

A person shall be joined as a party in the action when either:

(1) In his absence complete relief cannot be accorded among those already parties.

(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:

(a) As a practical matter, impair or impede his ability to protect that interest.

(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

"If a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed. " La.Code Civ.P. art. 642. When making such a determination, the code instructs the court to consider the following factors:

(1) To what extent a judgment rendered in the person's absence might be prejudicial to him or those already present.

17

(2) The extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or by other measures.

(3) Whether a judgment rendered in the person's absence will be adequate.

(4) Whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

"In evaluating those four factors, [an appellate court] should review the findings of the trial court in accordance with the 'abuse of discretion' standard of review." *Rayford v. Nat'l R.R. Passenger Corp.*, 05-1273, p. 9 (La.App. 4 Cir. 4/13/07), 962 So.2d 5, 9, *writ denied*, 07-1021 (La. 8/31/07), 962 So.2d 439.

Alan contends that the trial court erred in allowing this matter to proceed to trial in Jeff's absence because, in its reconventional demand, Kite alleged that both Alan and Jeff were liable to it in solido for any overpayment they received in the form of salaries and bonuses. In opposition, citing Uniform Rules—Courts of Appeal, Rule 1-3, Kite submits that because Alan did not file a peremptory exception of nonjoinder of a party under La.Code Civ.P. arts. 641 and 642, he should not be allowed to now claim on appeal that the trial court erred by failing rule on his unfiled exception. Kite further submits that in a Consent Judgment submitted to the trial court on March 27, 2009, Jeff, Mr. Kite, and Kite Bros. listed the main demand by Alan and Jeff against Kite as well as the reconventional demand by Kite against his two sons and stated "that all claims between Jeffrey Kite and his father, Robert Kite, and between Jeffrey Kite and Kite Bros., L.L.C., are hereby dismissed with prejudice.[5]" Finally, Kite directs this court's attention to La.Code Civ.P. art. 643 which provides that "[o]ne or more solidary obligees

---

[5] The Consent Judgment noted that it did not cover certain claims that were reserved in a Confidential Settlement Agreement between Mr. Kite, Kite Bros., and Jeff.

18

may sue to enforce a solidary right, and one or more solidary obligors may be sued to enforce a solidary obligation, without the necessity of joining all others in the action."

We note that at trial, Mr. Scarborough only testified as to the excess and/or unauthorized salary and bonuses that Alan took from Kite Bros. In addition, the appealed judgment was rendered against Alan only. Given the foregoing, we find no abuse of discretion on the trial court's decision to decide the merits of this case in Jeff's absence, especially where Alan failed to place this issue directly before the trial court. Alan's fourth assignment of error lacks merit.

### Kite's Answer to Appeal

Kite answered Alan's appeal to request that it be awarded additional attorney fees to account for the fees incurred in defending this appeal, which it deems frivolous. In *Kite Bros., LLC v. Kite RV, LLC*, 14-374, p. 1 (La.App. 3 Cir. 11/5/14), 150 So.3d 608, 609, we stated:

> Uniform Rules—Courts of Appeal, Rule 2–19 provides, "The court may award damages for frivolous appeal in civil cases as provided by law." Those damages are provided by law in La.Code Civ.P. art. 2164, and those damages may include attorney fees. An appellee seeking those damages must demand them in an answer to the appeal. La.Code Civ.P. art. 2133.

> Appeals are favored; thus, appellate courts are reluctant to impose damages for frivolous appeal. *Moffett v. Moffett,* 10-1364 (La.App. 3 Cir. 6/22/11), 67 So.3d 1287. Regarding the award of damages for frivolous appeal, this court has enunciated the following test:

>> Louisiana Code of Civil Procedure Article 2164 provides for an award of damages for frivolous appeal. If the court feels that counsel for the appellant does not seriously advocate the position taken or that the appeal was filed solely for dilatory purposes, then damages for frivolous appeal are appropriate. *Gallien v. Winn-Dixie,* 96-832 La.App. 3 Cir. 12/11/96), 685 So.2d 531 (citing *Hampton v. Greenfield,* 618 So.2d 859 (La.1993)); *Doe v. Roman*

19

> *Catholic Church,* 94-1476 (La.App. 3 Cir. 5/3/95), 656 So.2d 5, *writ denied,* 95-2076 (La.11/13/95), 662 So.2d 478. However, if even the slightest justification is found for the appeal, and even if the appellant does not prevail on appeal, damages will not be awarded. *Hawkins v. City of Jennings,* 97-1291 (La.App. 3 Cir. 3/6/98), 709 So.2d 292.

> *Moraus v. Frederick,* 05-429, pp 9-10 (La.App. 3 Cir. 11/2/05), 916 So.2d 474, 481-82.

Because Alan prevailed in having two aspects of the judgment against him amended and/or reversed, we do not deem his appeal entirely frivolous, and we decline to award Kite additional attorney fees on appeal.

## DECREE

For the reasons assigned herein, the motion for partial dismissal filed by Robert Kite and Kite Bros., L.L.C., is granted. The judgment rendered in favor of Robert Kite and Kite Bros., L.L.C., and against Alan Kite is amended to provide that legal interest on the portion of the award representing the $354,207.17 in attorney fees owed by Alan to Kite Bros. shall run from the date of judgment. In addition, that portion of the judgment against Alan and in favor of Kite Bros. for $29,625.00 which represented the payment of a thing not owed is reversed. In all other respects, the judgment is affirmed. All costs of this appeal are assessed against Alan Kite.

**MOTION FOR PARTIAL DISMISSAL GRANTED; JUDGMENT AMENDED IN PART, REVERSED IN PART, AFFIRMED AS AMENDED, AND RENDERED.**

20

STATE OF LOUISIANA

THIRD CIRCUIT COURT OF APPEALS

14-807

Consolidated with

14-808

R. ALAN KITE

VERSUS

KITE BROS., LLC.

**Cooks, J., dissents.**

Although I agree with the majority's decision on all other issues, I cannot join in the majority's reversal of the trial court's award of damages to Mr. Kite regarding the Gum Cove property. I believe the trial judge correctly awarded a return of the monies paid by Mr. Kite on behalf of his son Alan for that property which was titled in his son's name. The majority appears entrenched in old law which is no longer applicable following the enactment of La. Civ.Code art.1967, which effected a change in the law in 1985. The former rule was so engrained in Louisiana law, and fastidiously taught, the majority apparently is unwilling to recognize the import of the new law, despite the fact that this court recognized, and presaged, the change in the law in the very case relied upon by the majority for its current position, as did the Louisiana Supreme Court in a case relying on that very case.

The majority's reliance on *Ogden v. Ogden*, 93-1413, p. 5 (La.App. 3 Cir. 9/21/94), 643 So. 2d 245, 248, *writ denied,* 94-2539 (La. 1/13/95), 648 So.2d 1339, and the requirement in Civil Code Article 1839 that "[a] transfer of immovable property must be made by authentic act or by act under private signature**," relies**

1

**on decisions involving facts occurring before the adoption of La.Civ. Code art. 1967, which became effective January 1, 1985**, and misapprehends the nature of the agreement between Mr. Kite and his son regarding the Gum Cove property. The Louisiana Supreme Court, in *Morris v. Friedman*, 94-2808, (La. 11/27/95), 663 So.2d 19, 25, relying on this court's decision in *Ogden*, noted in footnote 11(emphasis added), ***"[t]he addition of La.C.C. art. 1967 in the Civil Code as an additional ground for enforceability of obligations may well alter this analysis."*** This fact was also noted by this court as well in the first *Morris* decision, *see Morris v. People's Bank & Trust Co.*, 580 So.2d 1029, 1033 (La.App. 3 Cir.), *writ denied*, 588 So.2d 101 (La.1991). Louisiana Civil Code Article 1967 (emphasis added), entitled "Cause defined, detrimental reliance" provides:

> Cause is the reason why a party obligates himself.
>
> **A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.** Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

Indeed, in two subsequent cases this court, applying La.Civ.Code art. 1967, found the requirement that an agreement be in writing in cases involving onerous agreements controlled by Article 1967, *no longer applied after its effective date. See Dugas v. Guillory*, 97-398 (La.App. 3 Cir. 10/7/98), 719 So.2d 719 and *Cenac v. Hart*, 98-1679 (La.App. 3 Cir. 4/7/99), 741 So.2d 690. Relying on this court's decisions in these cases, the Louisiana Fifth Circuit Court of Appeals in *Rhoads v. Quicksilver Brokers*, Ltd. 01-768, p. 9 (La.App. 5 Cir. 1/14/01), 801 So.2d 1284, 1289 (emphasis added) reversed the lower court's grant of summary judgment noting:

2

Plaintiff contends the "cause" argument is simply defendant's attempt to impose a suspensive condition on plaintiff's right to exercise her option, so that defendant seeks *to orally modify* the terms of the stock option agreement. Plaintiff points out that, at the time the stock option agreement was confected, Louisiana had a Statute of Frauds regarding securities that stated a contract for the sale of securities *was not enforceable unless it was in writing*. La.R.S. 10:8-319 (Repealed).

In *Morris v. Friedman,* 94-2808 (La.11/27/95), 663 So.2d 19, 26, the Louisiana Supreme Court held that a claim of equitable estoppel or detrimental reliance will not lie when the law requires the contract to be in writing: "[T]here can be no recovery on the basis of equity where, as in the instant case, a positive statutory writing requirement, not adhered to, exists." ***The Morris court noted, however, that the facts in the case occurred in 1984, prior to the effective date of La.C.C. art.1967. . .***

In *Dugas v. Guillory,* 97-398 (La.App. 3 Cir. 10/7/98), 719 So.2d 719, 726, in which former employees of a company brought action against the principal for *breach of an oral promise to transfer 65% of the company's stock to the employees*, the court held that under La.C.C. art.1967 and the given circumstances of the suit, the *plaintiffs' reliance on the defendant's oral promise, although not executed in written form, was reasonable because the promise was onerous in nature.*

As explained in *Dugas* and in *Cenac v. Hart,* 98-01679 (La.App. 3 Cir. 4/7/99), 741 So.2d 690, 695, **the 1985 enactment of La.C.C. art.1967 was controlling over the Statute of Frauds. . . .**

The Louisiana Second Circuit Court of Appeals discussed the import of

La.Civ. Code art. 1967 in *Benton v. Clay*, 48,245 (La. App. 2 Cir. 8/7/13), 123 So.

3d 212, 222-23 (emphasis added):

> **Detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence** . . . . This is because detrimental reliance is not based upon the intent to be bound. *Rather, the basis of detrimental reliance is the idea that a person should not harm another person by making promises that he will not keep. Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment. Suire v. Lafayette City–Parish Consol. Gov't, supra; Allbritton v. Lincoln Health Syst., Inc., supra.*

3

To prevail on a detrimental reliance claim, Ms. Benton was not required to prove a valid, enforceable contract . . . Mr. Clay harmed Ms. Benton by making a promise that he did not keep. Ms. Benton was deprived of an undivided 1/2 ownership interest in the property and receiving her share of the proceeds from the timber sales. Based on this record, Ms. Benton proved her claim for detrimental reliance, in addition to the fact that she proved a valid and enforceable contract.

**FN5. Mr. Clay contends that, because <u>the agreement to buy the property jointly with Ms. Benton was not written</u>, the doctrine of detrimental reliance does not apply, citing *Morris v. Friedman, 94–2808 (La.11/27/95), 663 So.2d 19*<u>.</u> However, *since the enactment of La. C.C. art.1967, <u>Louisiana courts have found detrimental reliance to occur despite the fact that an onerous contract may lack a requisite formality such as written execution in authentic form,</u>* provided that the requisites of La. C.C. art.1967 are satisfied. See *Dugas v. Guillory, 97–398 (La.App. 3d Cir.10/7/98), 719 So.2d 719*.**

Furthermore, we reject the Clays' arguments that the formalities required by La. C.C. art. 2440 are lacking in this case and preclude recovery. The agreement between Ms. Benton and Mr. Clay was not required to be in any particular written form. **It was not a transfer of immovable property between Ms. Benton and Mr. Clay as contemplated by La. C.C. art. 1839, which provides in pertinent part:**

> A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.

Further, their agreement was not a sale or promise of sale of an immovable between Ms. Benton and Mr. Clay as governed by La. C.C. art. 2440, which states:

> A sale or promise of sale of an immovable must be made by authentic act or by act under private signature, except as provided in Article 1839.

**The parties began with an oral agreement to jointly bid on the property and secure the winning bid . . .**

. . . .

**The trial court did not err in ordering specific performance of the agreement and ordering the Clays to do whatever was**

4

**necessary to transfer an undivided 1/2 interest in the property to Ms. Benton free of any mortgages, liens, or other encumbrances**.

Mr. Kite gave unrefuted testimony at trial that Alan made an onerous agreement with him to enable Alan to purchase an undivided interest in immovable property with a third party. The agreement between Alan and Mr. Kite was not an agreement between them to purchase and sell immovable property. Mr. Kite explained in his unrefuted testimony at the trial on the merits that the agreement was, instead, an agreement for Mr. Kite to provide Alan with the funds *he* needed to purchase an undivided interest in the immovable property in exchange for which Alan promised his father he would transfer title to the property to him at any time Mr. Kite requested him to do so. Mr. Kite lived up to his part of the agreement and provided the funds to Alan enabling *Alan* to purchase an interest in the Gum Cove property. Alan refused to honor his part of the agreement, and would not even allow his father any further access to the property. When questioned at trial, Mr. Kite explained that Alan expressed to him that **he** wanted to buy an interest in the Gum Cove property. According to Mr. Kite's testimony, he had been using the property free of charge thanks to a personal friend. He testified that Alan went to Lake Charles for the closing with the other new owners, and, while at the closing, telephoned Mr. Kite from Lake Charles to inform him that the property interest must be purchased in Alan's name: "He called me and he said Daddy the only way that we can do this is that we're [Alan and his co-owners] gonna form a hunting club, and in order to be in the hunting club you've got to have the property in the person's name and would you allow me to put this property in my name and at any time you want me to deed it back to you I would be more than glad, I would do it because this is the only way that we [meaning Alan and the co-owners] can form

5

this hunting club." Additionally, Mr. Kite testified without contradiction that he "didn't owe any money to Amaco" the seller of the property. Mr. Kite was not purchasing immovable property from Amaco, which transaction would have required an authentic act in writing. Alan was purchasing an interest in immovable property from the Seller, Amaco, and it is Alan who signed the necessary written authentic act to transfer title to immovable property as is required by law. **After the enactment of La. Civ.Code art. 1967, there is no requirement that Alan and Mr. Kite's agreement concerning the Gum Cove property be in writing,** even though the agreement relates to immovable property. *See*, *Benton*, 123 So. 3d 222-23, *infra*. If Alan had honored his agreement, his deed transferring ownership of his interest in immovable property to his dad would have been by authentic act in writing, but that never occurred because he refused to keep his word.

Mr. Kite is entitled to recover his money because he relied on Alan's promise to his detriment. Both cases cited above after the adoption of La. Civ.Code art. 1967, and cases such as *Ogden*, heralding the change in the law, clearly demonstrate the rightness of the trial court's decision and govern the decision of this court. I note, too, contrary to the concurrence, the trial court did not "rely on facts not offered into evidence at the two-day trial on the merits" but did in fact, rely on the undisputed testimony of Mr. Kite at the trial on the merits concerning the Gum Cove property. I note too that Alan's lawyer has done a commendable job in taking over this case from previous counsel, but the existence of that fact cannot change the facts and the law in this case. To do so in this case obfuscates, confuses, and simply ignores what has been the law since 1985.

I respectfully dissent from that portion of the majority's opinion that reverses the trial court's award of monetary damages to Mr. Kite concerning the

6

Gum Cove property.  Mr. Kite is entitled to recover the $29,625.00 awarded for the

Gum Cove property.

R. ALAN KITE

VERSUS

KITE BROS., LLC, ET AL.

Consolidated with 14-808

KITE BROS. LLC, ET AL.

VERSUS

R. ALAN KITE

**PETERS, J., concurs in the result and assigns reasons.**

I join to form the majority in this protracted litigation, but assign additional reasons to reflect that while I find the evidence sufficient to support the judgment on all issues except the Gum Cove property and the interest issue, this matter raises additional issues. However, despite their presence, they do not affect the outcome suggested in the majority opinion.

This litigation began in 2006, and the underlying family relationships have generated the intensely personal animosity which gave rise to the judgment of the trial court now before us. The evidence was adduced at the two-day trial on the merits held on April 1, 2013, and August 1, 2013; and Alan Kite participated in the April 1 proceeding, but as explained in the majority opinion, declined to participate in the August 1 proceeding. His failure to participate resulted in a proceeding more resembling a default judgment confirmation than a contested trial on the merits.

In considering the matter on the merits, I do note that in the judgment recorded on December 16, 2013, the trial court stated that it reached its judgment by considering, among other things, "the prior summary judgment rulings by [the trial court], and the evidence submitted in support and opposition thereto[.]" I find nothing in the record that suggests the summary judgment proceedings were offered into evidence at trial. That being the case, to the extent the trial court relied on any evidence introduced at the summary judgment hearing, such reliance was error. Additionally, such a proceeding does not provide for the confrontation and cross-examination allowed at a trial on the merits. Even if the summary judgment proceedings had been introduced at the trial on the merits, the trial court could not have considered anything other than the undisputed findings of fact generated therein. La.Code Civ.P. art. 966(B). The trial court also noted in the judgment that it also considered this court's opinion resulting from the summary judgment proceedings as set forth in *Kite v. Kite Bros.*, 11-334, 11-335 (La.App. 3 Cir. 10/5/11), 74 So.3d 1266, *writ denied*, 11-2436 (La. 1/13/12), 77 So.3d 966. While a trial court can take judicial notice of a prior judgment, the opinion of this court was an appeal of the aforementioned summary judgment proceeding and any consideration of those proceedings would be limited as well. La.Code Civ.P. art. 966(B).

Despite the trial court's error in considering the summary judgment proceedings, I concur in the result set forth in the majority opinion because the factual record we are allowed to consider supports the majority affirmation of everything except the award for the Gum Cove property and the date interest is to run on the attorney fee award. With regard to the Gum Cove property, the majority opinion correctly concludes that Mr. Kite's testimony, standing alone, was not

2

sufficient to establish the elements necessary to prove payment of a thing not due, detrimental reliance, or unjust enrichment. *See* La.Civ.Code art. 1846.

I do, however, disagree with the analysis concerning the jurisdictional issue as set forth in the majority opinion. Without commenting on the effective date of the remand, the majority opinion finds that the federal judge's August 1, 2013 oral order of remand, which was signed on August 7, 2013, "[was] *res judicata* as to the *forum*[,]" citing *New Orleans Public Service, Inc. v. Majoue*, 802 F.2d 166 (5th Cir. 1986). I agree that the cited case stands for that rule of law, but 28 U.S.C. § 1447(c) provides that "[a] certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court *may thereupon proceed* with such case." (Emphasis added.) If an order of remand was required in this matter, Alan Kite's argument that the trial court could not proceed until receipt of the written order of remand, would have merit. In fact, counsel for Mr. Kite and Kite Bros. L.L.C. conceded as much at one of the oral arguments in this matter when he acknowledged that the federal judge could have changed her mind anytime between her oral order of August 1, 2013, and the filing of her written order of August 7, 2013, in state court on August 19, 2013.

Still, while I disagree with the majority opinion analysis on this issue, I find that it reached the correct result. The federal district court concluded that Alan Kite's attempted removal was untimely filed under 11 U.S.C. § 9027(a)(2). That being the case, the state trial court never lost jurisdiction. *See generally Motton v. Lockheed Martin Corp.*, 97-204 (La.App. 4 Cir. 3/19/97), 692 So.2d 6. Because it never lost jurisdiction, the trial court could have proceeded with the trial on August 1, 2013, without pursuing a federal court remand. Therefore, the fact that the trial court proceeded with the trial before the filing of the remand order in the state

3

court records did not affect its jurisdiction, and the ultimate result of the trial is not null and void as argued by Alan Kite.

In fact, but for the untimeliness of the attempt at removal, I would have found merit in the first assignment of error and remanded this matter for a new trial. Although the trial court saw fit to communicate with the federal court and received immediate relief for Mr. Kite and Kite Bros. L.L.C., I do not find that an "emergency telephone hearing" was made necessary by the filing of the removal action. This matter has been pending since 2006, and the action on behalf of Alan Kite was simply another of the many trial tactics that had been effected over the years by both sides in this litigation. However, as pointed out in the majority opinion, when he untimely filed for removal, "Alan acted at his own peril when he chose to let the trial proceed in his absence."

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

14-807

R. ALAN KITE

VERSUS

KITE BROS., LLC, ET AL.

14-808

KITE BROS., LLC, ET AL.

VERSUS

ALAN KITE, ET AL.

AMY, J., concurring in part and dissenting in part.

I agree with the majority opinion in all respects other than its reversal of the trial court's award for damages for the Gum Cove dispute. I dissent on this limited aspect of the case.

In my opinion, the Gum Cove issue is not appropriately considered as a contractual dispute involving an immoveable. Rather, I find no manifest error in the trial court's award on an equitable basis in light of the parties' expectations. Accordingly, and under the facts of this case, I would affirm the trial court's award of damages for payment of a thing not owed.